**Julian Maurice LACEY, Appellant–
Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 45A03–9512–CR–434.

Court of Appeals of Indiana.

Aug. 21, 1996.

Jeff Schlesinger, Appellate Public Defender, Crown Point, for Appellant–Defendant.

Pamela Carter, Attorney General of Indiana, James D. Dimitri, Deputy Attorney General, Office of Attorney General, Indianapolis, for Appellee–Plaintiff.

## OPINION

GARRARD, Judge.

A jury found Julian M. Lacey ("Lacey") guilty of Voluntary Manslaughter, a class A felony. The trial court sentenced Lacey to the Indiana Department of Corrections for a period of twenty-five (25) years. Lacey now appeals.

### FACTS

On January 11, 1995, Michael McWhorter ("McWhorter") was preparing to move into an apartment with his cousin, David Mackey ("Mackey"). While waiting for McWhorter outside of McWhorter's girlfriend's house, Mackey took McWhorter's car to find some cocaine. Mackey drove to a location where he believed drugs were sold and there he met Lacey. Mackey then allowed Lacey to use McWhorter's car in exchange for either cocaine or money. Mackey testified that he observed that Lacey had a gun on his person at that time. On January 12, 1995, McWhorter and Billy Reynolds ("Reynolds"), his friend and business partner, went to look for McWhorter's car. McWhorter and Reynolds observed McWhorter's car being driven down the street, and they pulled up beside it at a traffic light. McWhorter, driving Reynolds' car, pulled in front of his own vehicle which resulted in an accident. Lacey was driving McWhorter's vehicle at the time with two female passengers. Lacey backed McWhorter's car a short distance from the accident. McWhorter got out of Reynold's vehicle, retrieved a wooden baseball bat from

the back seat, approached the driver's side of his car with the bat, and demanded that the occupants leave his vehicle. There was conflicting testimony as to whether Lacey exited McWhorter's vehicle with a gun or one of the female passengers handed him a gun after he exited McWhorter's car. Lacey shot McWhorter in the side of the chest. Lacey testified at trial that the gun did not belong to him and that he had previously found the gun in McWhorter's car. He also testified that he did not have a permit to carry a weapon. McWhorter died as a result of the gunshot wound. Lacey drove away in McWhorter's car. Lacey hid at a friend's house for 13 days and then turned himself into police.

## ISSUES

I.   Whether the trial court committed fundamental error by instructing the jury that the possession of an unregistered handgun negated the possibility of self-defense.

II.   Whether failure to object to the instruction that possession of an unregistered handgun negated the possibility of self-defense constituted ineffective assistance of counsel.

III.   Whether the trial court erred in its denial of Lacey's motion for a directed verdict on the charge of murder.

IV.   Whether the court erred in its admission of a picture of the victim because the picture lacked probative value on the issue of Lacey's guilt.

## DISCUSSION AND DECISION

### I.

Lacey failed to object to final jury instruction no. 16 which stated:

A person who is not in his home or fixed placed of business and is carrying a handgun without a license therefor cannot by

law claim the protection of the law of self-defense. (R. 52). The trial court specifically asked Lacey if he wanted to object to the instructions and Lacey's counsel replied "[n]o objections." (R. 404).

■   When a defendant fails to object to a jury instruction, our review is limited to ascertaining whether fundamental error was committed. *Sevits v. State*, 651 N.E.2d 278, 282 (Ind.Ct.App.1995) (citing *Coleman v. State*, 630 N.E.2d 1376, 1378 (Ind.Ct.App. 1994), *trans. denied* ). " 'Only when the record reveals clearly blatant violations of basic and elementary principles, and the harm or potential for harm could not be denied, will this Court review an issue not properly raised and preserved.' " *Burkes v. State*, 445 N.E.2d 983, 985 (Ind.1983) (quoting *Warriner v. State*, 435 N.E.2d 562, 563 (Ind.1982)).

Lacey points out that in *Harvey v. State*, 652 N.E.2d 876 (Ind.Ct.App.1995), *trans. denied*, we held that a jury instruction with the same language [1] was reversible error because it denied the defendant his claim of self-defense. *Id.* at 877. In holding the instruction to be reversible error in *Harvey*, we noted that "[a] defendant is also entitled to an instruction on any defense which has some foundation in the evidence, even when that evidence is weak or inconsistent." (citing *Strong v. State*, 591 N.E.2d 1048, 1050 (Ind. Ct.App.1992), *trans. denied* ).[2]

The self defense statute provides, in relevant part:

(d) Notwithstanding subsections (a), (b), and (c) of this section, a person is not justified in using force if:

(1) he is committing, or is escaping after the commission of, a crime;

IND.CODE § 35–41–3–2(d). We held in *Harvey* that the literal application of the self defense statute did not authorize or require the instruction and that the statute's intent was "to preclude the defense where it is

---

1.   The only change in the language from the instruction in *Harvey* is the insertion of the word "therefor" in the above instruction. *Harvey*, 652 N.E.2d at 876, (R. 52).

2.   "[W]e will not find reversible error unless an instruction error, when considered with the rest of the instructions as a whole and in reference to

each other, is such that the charge to the jury misstates the law or otherwise misleads the jury as to the law applicable to the case." *Harvey v. State*, 652 N.E.2d 876, 877 (Ind.Ct.App.1995), *trans. denied* (citing *Starks v. State*, 620 N.E.2d 747, 750–51 (Ind.Ct.App.1993)).

sought by one who was actively engaged in the perpetration of a crime, and that criminal activity produced the confrontation wherein the force was employed." *Harvey,* 652 N.E.2d at 877.

Lacey argues that since the *Harvey* decision predated his trial, the trial court's instruction constitutes fundamental error. However, in *Harvey* there was a proper and timely objection to the instruction. No such objection was made by Lacey. Lacey is attempting to avoid waiver of the issue by characterizing the giving of the instruction as fundamental error.

■ Fundamental error has been an evolving doctrine with a consistent descriptive theme involving the denial of fundamental due process.

> Alleged errors in the giving of instructions are not available on appeal unless proper specific objections are made at trial. Ind. Crim.Rule 8(B). However, a trial error may be deemed "fundamental" so as to avoid procedural default if it is a "substantial blatant violation of basic principles" that renders a trial unfair to defendant.

*Winegeart v. State,* 665 N.E.2d 893, 896 (Ind. 1996) (quoting *Townsend v. State,* 632 N.E.2d 727, 730 (Ind.1994)). "[F]or a mistake to constitute fundamental error, 'it must be so prejudicial to the rights of a defendant as to make a fair trial impossible.'" *Id.* (quoting *Barany v. State,* 658 N.E.2d 60, 64 (Ind.1995)). "[I]n order to constitute fundamental error, an error must be blatant and the potential harm must be so substantial and apparent that to ignore it would clearly constitute a denial of due process." *Hinkle v. State,* 569 N.E.2d 349, 350 (Ind.Ct.App. 1990), *trans. denied* (citing *Burkes v. State,* 445 N.E.2d 983, 985 (Ind.1983)).

A more specific definition of fundamental error for purposes of appellate review has proven elusive. This is due, in part, to differing perspectives as to whether the circumstances of a case contribute to the determination that the error is indeed fundamental, or whether certain errors are initially determined to be of the fundamental class, i.e. reviewable in the absence of a contemporaneous objection, but then the circumstances of the case are examined and a determination is

made that in the context of the case before the court the error may nevertheless be harmless. In the latter approach, the definition of "fundamental" is less critical, and ofttimes the reviewing court will simply refer to a "denial of fundamental due process."

In reviewing the various definitions, we have expressed concern that the fundamental fairness doctrine should not become a safe harbor for defendants who fail to raise proper and timely objections at trial. "One of the cornerstones of our litigation process has been the contemporaneous objection rule." *Stewart v. State,* 567 N.E.2d 171, 174 (Ind.Ct. App.1991), *trans. denied.* With this guidepost in mind, we held that:

> [T]he doctrine of fundamental error exists as the exception to that rule since it permits consideration on appeal of errors to which no objection was made at trial.... The mere fact that error occurred and that it was prejudicial will not suffice. That, after all, is the ordinary rule for reversal on appeal when the contemporaneous objection has been made. *Rather the error must be one such that the defendant could not possibly have had a fair trial or such that this court is left with the conviction that the verdict or sentence is clearly wrong or of such dubious validity that justice cannot permit it to stand.*

*Id.* (emphasis added).

An error is deemed to be fundamental error if it was "so prejudicial to the defendant that he '*could not* have had a fair trial', [citation omitted], [and] suggests to us an error that pervades the climate of the proceedings below, *viewed as a whole,* depriving the defendant of any realistic opportunity for a fair hearing." *Winston v. State* (1975), 165 Ind.App. 369, 332 N.E.2d 229, 232 [emphasis in original]. In order to invoke this doctrine, it is not enough that a constitutional right is implicated. *Warriner, supra.* Rather, in determining whether fundamental error has occurred, we consider the character of the error and its effect upon the trial as a whole. *Kremer v. State* (1987), Ind., 514 N.E.2d 1068.

*Stowers v. State,* 657 N.E.2d 194, 197–198 (Ind.Ct.App.1995), *trans.' denied.*

An additional point seems clear. At whatever point the reviewing court engages in its harm analysis vis-a-vis fundamental error, the review concerns the record in its entirety. *Collins v. State,* 567 N.E.2d 798 (Ind. 1991). We do so remaining cognizant of the province of the jury in determining the facts. As Justice Powell explained, writing for the majority, in *Rose v. Clark,* 478 U.S. 570, 582 n. 11, 106 S.Ct. 3101, 3108 n. 11, 92 L.Ed.2d 460 (1986):

> We agree that the determination of guilt or innocence, according to the standard of proof required by *Winship* and its progeny, is for the jury rather than the court.... Harmless-error analysis addresses a different question: what is to be done about a trial error that, in theory, may have altered the basis on which the jury decided the case, but in practice clearly had no effect on the outcome. This question applies ... to other errors that may have affected either the instructions the jury heard or the record it considered.... All of these errors alter the terms under which the jury considered the defendant's guilt or innocence, and therefore all theoretically impair the defendant's interest in having a jury decide his case. The dissent's argument—that the Sixth Amendment forbids a reviewing court to decide the impact of a trial error on the outcome ... logically implies that all such errors are immune from harmless-error analysis. Yet this court has repeatedly held to the contrary.

(Citations omitted.)

■ Lacey argues that the improper instruction was fundamental error because this court held in *Harvey* that the same instruction was reversible error when the defendant had preserved an objection at trial. This argument is erroneous. Such a holding would require that a reversible error equates to a fundamental error whenever the defendant fails to enter a proper and timely objection at trial. That would, of course, obviate the contemporaneous objection rule. The only supportive fact that Lacey offers from the trial is that it was undisputed that Lacey

shot McWhorter after McWhorter approached Lacey carrying a baseball bat. (Appellant Brief, p. 9). Lacey fails to argue how he has been prejudiced by the instruction, and he has failed to show that he could not possibly have had a fair trial or that there is such error that "this court is left with the conviction that the verdict ... is clearly wrong or of such dubious validity that justice cannot permit it to stand." *Stewart v. State,* 567 N.E.2d 171, 174 (Ind.Ct.App.1991), *trans. denied.* Lacey states the harm was clear and prospective. We do not agree.

Lacey has presented no issue as to the remaining jury instructions. The jury convicted Lacey beyond a reasonable doubt of all of the elements of the offense. There is no issue brought before this court that any instruction regarding the elements of the offense or the burden of proof was improper.

. Self-defense is an affirmative defense. "It is well settled in Indiana that to prevail on a claim of self-defense, the defendant must have been in a place where he had a right to be, acted without fault, and acted in reasonable fear or apprehension of death or great bodily harm." *Dean v. State,* 432 N.E.2d 40, 42 (Ind.1982).

In looking at the record as a whole, there is a dispute as to whether there was a physical confrontation between Lacey and McWhorter. However, there is no evidence that McWhorter told Lacey he was going to strike him or cause bodily injury to him. Nor is there any evidence that McWhorter struck Lacey or took a swing at Lacey with the bat. Both Reynolds and Lacey's passenger testified that there was no physical confrontation, just an exchange of words. Even Lacey's version indicated only that McWhorter held onto Lacey's jacket. Although Lacey testified that he was scared, there was no testimony that Lacey believed he was ever in fear of death or serious bodily injury. There was testimony from Reynolds that McWhorter had dropped the bat and was attempting to retreat. Lacey also admitted on cross-examination that it would have been possible for him to have driven around Reynold's vehicle and avoided any confrontation. Lacey indicated that he was concerned that such an act would have been

a "hit and run situation." (R. 384). However, Lacey did not attempt to report either the accident or the shooting after the event. It would require new heights of gullibility to believe that a person in reasonable fear of impending death or serious bodily injury would be more concerned about leaving the scene of an accident. Although Lacey's account differs from that of the other witnesses, there is no evidence or testimony to support that Lacey was reasonably in fear of death or serious bodily injury.

The record, when viewed as a whole, does not leave us with a conviction that the defendant could not possibly have had a fair trial with the instruction or that the verdict is clearly wrong or of such dubious validity that justice cannot stand. Therefore, we find that although the instruction was improper,[3] there was no fundamental error when the trial court gave the instruction without any objection.

■ Similarly, if the giving of the jury instruction is viewed as a fundamental error subject to a harmless error analysis, the result is the same. Based on the evidence as a whole, the error was harmless. We conclude that an honest and fair-minded jury would have rendered a guilty verdict absent the use of the erroneous instruction.

## II.

■ Lacey argues that he received ineffective counsel when his trial attorney failed to object to the instruction that possession of an unregistered handgun negated the possibility of self-defense. "Ineffective assistance of counsel claims are judged by the standard set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)." *Hackett v. State,* 661 N.E.2d 1231, 1233 (Ind.Ct.App.1996), *reh'g denied* (citation omitted).

A claim of ineffective assistance, as violating the Sixth Amendment of the U.S. Constitution, is subject to a two-part test. In order to prevail, the petitioner must show that 1) his counsel's performance fell below an objective standard of reasonableness, and 2) there is a reasonable probability

that, but for counsel's deficient performance, the result of the proceeding would have been different.

*Id.* To prevail on a claim of ineffective assistance of counsel, Lacey must establish both prongs of the two-part standard. *Wooden v. State,* 657 N.E.2d 109, 112 (Ind.1995).

■ Lacey makes no contention that the result of the trial would have been different. He offers no evidence or argument from which we could find a reasonable probability that but for counsel's error there would be a different result. Lacey's argument does nothing more than state the standard of review to evaluate an ineffective assistance of counsel claim and conclude that the giving of the instruction constituted ineffective assistance of counsel. In reaching our finding on the first issue, we reviewed the record and concluded that an honest and fair-minded jury would have rendered a guilty verdict absent the instruction. Therefore, Lacey has failed to establish the second prong of his claim and the assertion of ineffective counsel must fail. While counsel erred in failing to object to the instruction, relief is unnecessary because there is no reasonable probability that but for the error, the result would have been different.

## III.

■ Lacey contends the trial court erred in denying his motion for judgment on the evidence at the close of the State's case on the charge of murder. He contends the jury should have only been instructed on voluntary manslaughter. By electing to proceed with the presentation of his own evidence, Lacey has waived appellate review of the ruling. *Snow v. State,* 560 N.E.2d 69, 74 (Ind.Ct.App.1990) *trans. denied.* Furthermore, the jury did not find Lacey guilty of murder, so he suffered no harm from the ruling. The evidence was clearly sufficient to sustain his conviction for voluntary manslaughter.

## IV

■ Lacey argues that the court erred in its admission of a picture of the victim

---

**3.** We reiterate that the instruction should not be given.

because the picture lacked probative value on the issue of Lacey's guilt. It is well established that a trial court has wide discretion in determining the admissibility of photographic evidence. *Butler v. State,* 622 N.E.2d 1035, 1039 (Ind.Ct.App.1993), *reh'g denied, trans. denied* (citing *Williams v. State,* 555 N.E.2d 133, 138 (Ind.1990)). "That discretion will not be disturbed absent abuse." *Id.* Photographs are relevant if they depict scenes that a witness is permitted to describe in his testimony. *Harrison v. State,* 644 N.E.2d 1243, 1256 (Ind.1995). The admission of an otherwise relevant photograph becomes reversible error only if its tendency to inflame the passions of the jury, due to its gruesomeness, clearly outweighs its relevancy. *Butler v. State,* 622 N.E.2d 1035, 1039 (Ind.Ct.App. 1993) *reh'g denied, trans. denied.*

The photograph of the victim was relevant. McWhorter died as a result of a single gunshot wound to the chest. The photograph depicted the location where the bullet entered the body of McWhorter. Dr. Kim, who performed the autopsy of McWhorter, testified that the photograph depicted the gunshot wound to McWhorter's chest. The state also argued that the location of the bullet tended to prove that McWhorter was turning away from Lacey. The photograph is clearly relevant. Although Lacey argues that the dangers of prejudice and confusion were so great, he offers no specifics to support this contention. The photograph is a picture of limited scope showing primarily the gunshot wound to the chest. Any tendency to inflame the passions of the jury does not clearly outweigh the relevancy of the photograph. The trial court committed no error in admitting the photograph.

Judgment is affirmed.

HOFFMAN and RUCKER, JJ., concur.