**STATE of Indiana, Appellant–Respondent,**

v.

**Anthony EUBANKS, Appellee–Petitioner.**

**No. 80A02–9906–PC–00419.**

Court of Appeals of Indiana.

May 26, 2000.

---

Jeffrey A. Modisett, Attorney General of Indiana, Rosemary L. Borek, Deputy Attorney General, Attorneys for Appellant.

William E. Daily, Danville, Indiana, Attorney for Appellee.

## OPINION

VAIDIK, Judge

The State appeals the trial court's grant of post-conviction relief vacating Anthony Eubanks' convictions for murder and criminal confinement. The trial court determined it was "reversible error" for the State to call two co-conspirators to the witness stand knowing they would refuse to testify. Eubanks cross-appeals the finding of the trial court that failure to object to this evidence was not ineffective assistance of counsel. Because we conclude that the witnesses' invocation of the Fifth Amendment did not prejudice Eubanks or result in an unfair trial, we reverse.

### Facts and Procedural History

Anthony Eubanks was found guilty of murder, a felony, and criminal confinement, a class B felony. The facts underlying Eubanks' convictions were set forth by a panel of this court in his direct appeal:

> On the evening of October 19, 1992, Eubanks went to the home of Darrell Heard, shot him in the head and killed him. Eubanks was angry and jealous

over Heard's relationship with Jodi Scott, a former longtime girlfriend of Eubanks. Eubanks claimed that he intended only to scare Heard and did not intend to kill him.

*Eubanks v. State,* 643 N.E.2d 994 (Ind.Ct. App.1994). On direct appeal, this court affirmed Eubanks' conviction for murder, finding sufficient evidence of his intent to kill Heard.

Eubanks sought post-conviction relief on several grounds: (1) failure of the trial court to hold a hearing outside the presence of the jury on the witnesses' rights to invoke the Fifth Amendment; (2) the trial court's failure to admonish the jury regarding the witnesses' assertions of the Fifth Amendment; (3) prosecutorial misconduct; and (4) ineffective assistance of trial and appellate counsel. PCR Record at 12–21. The post-conviction court found that the prosecutor's calling of two witnesses to testify, knowing they would invoke the Fifth Amendment in the presence of the jury, was reversible error. The court granted relief, vacated all of Eubanks' convictions, and ordered a new trial. The post-conviction court denied relief on all other grounds asserted by Eubanks. The State now appeals the grant of relief. The defendant cross-appeals claiming the trial court erred when it failed to find ineffective assistance of counsel.

## Discussion and Decision

■■■ Post-conviction proceedings do not provide defendants with a "super appeal." *Conner v. State,* 711 N.E.2d 1238, 1244 (Ind.1999). Rather, they provide a narrow remedy for subsequent collateral challenges to convictions. *Id.* The purpose of a petition for post-conviction relief is to raise issues unknown or unavailable to a defendant at the time of the original trial and appeal. *Lowery v. State,* 640 N.E.2d 1031, 1036 (Ind.1994) ("Post-conviction actions are special, quasi-civil remedies whereby a party can present an error which, for various reasons, was not available or known at the time of the original

trial or appeal."), *cert. denied,* 516 U.S. 992, 116 S.Ct. 525, 133 L.Ed.2d 432 (1995).

### Standard of Review

This appeal by the State is from a judgment granting post-conviction relief. The defendant cross-appeals, however, on the trial court's finding that he received effective assistance of counsel and therefore, was not entitled to relief on that ground. Indiana Post–Conviction Rule 1(7) authorizes an appeal to be taken by either the defendant or the State. However, the applicable standard of review is not identical for both parties. *Spranger v. State,* 650 N.E.2d 1117, 1119 (Ind.1995).

■■■ Our review of a judgment granting post-conviction relief is governed by Indiana Trial Rule 52(A), which provides that "the court on appeal shall not set aside the findings or judgment unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." *See State v. Moore,* 678 N.E.2d 1258 (Ind. 1997), *cert. denied,* 523 U.S. 1079, 118 S.Ct. 1528, 140 L.Ed.2d 678 (1998). The "clearly erroneous" standard is a review for sufficiency of the evidence. *Spranger,* 650 N.E.2d at 1119. We reverse only upon a showing of "clear error"—that which leaves us with a definite and firm conviction that a mistake has been made. *Id.* " [C]lear error' review requires the appellate court to assess whether 'there is *any* way the trial court could have reached its decision.' " *Moore,* 678 N.E.2d at 1261. Under this standard, we defer substantially to findings of fact but not to conclusions of law. *Id.*

■■■ When a defendant appeals the denial of post-conviction relief, he appeals from a negative judgment because he had the burden of establishing grounds for relief at the post-conviction proceeding. *See State v. Clanton,* 443 N.E.2d 1204, 1205 (Ind.Ct.App.1982) (petitioner has burden of proof at post-conviction; "Therefore, when the petition is denied, the petitioner

who appeals 'stands in the position of one appealing a negative judgment.'" (citation omitted)); Ind. Post–Conviction Rule 1(5). On review of an appeal from a negative judgment, the appellate court "must be convinced that the evidence as a whole was such that it leads unerringly and unmistakably to a decision opposite that reached by the trial court." *Spranger*, 650 N.E.2d at 1119. We will consider each party's claim in turn, applying the applicable standards of review.

## I. State's Appeal

### A. Waiver

Initially we note that the State argues that Eubanks has waived any claim of fundamental error as a result of the witnesses' invocations of the Fifth Amendment because defense counsel failed to raise the issue on direct appeal. While we agree with the State that generally an issue that was available but not raised on direct appeal is waived at the post-conviction hearing, *see Trueblood v. State*, 715 N.E.2d 1242, 1248 (Ind.1999), the State failed to argue waiver [1] to the post-conviction court and therefore has waived the affirmative defense. *See Langley v. State*, 256 Ind. 199, 267 N.E.2d 538, 541–42 (1971) ("Where ... the state, as it did in this case, chooses to meet a petitioner's allegations on their merits at the hearing, we must do likewise on appeal."); *Mickens v. State*, 596 N.E.2d 1379, 1381 (Ind.1992) ("Waiver is an affirmative defense to a petition for post-conviction relief. The

State therefore must present a waiver claim before a court can find waiver."). Given the State's election to argue the merits in the post-conviction court, we must also base our review on the merits.

### B. Fundamental Error

Indiana law recognizes both reversible and fundamental error. Reversible error requires a contemporaneous objection at trial. To demonstrate reversible error, the defendant must show that error occurred and that it was prejudicial. *Lacey v. State*, 670 N.E.2d 1299, 1302 (Ind. Ct.App.1991). Fundamental error, however, requires a defendant to show greater prejudice than reversible error because no objection has been made. To demonstrate fundamental error, the defendant must show that the error was so prejudicial that he "could not possibly have had a fair trial" and that the error "pervaded the climate of the proceedings below, viewed as a whole, depriving the defendant of any realistic opportunity for a fair hearing." *Id.* (citations omitted).

The fundamental error standard of review is the appropriate standard of review here.[2] Although the State did not properly plead waiver in the post-conviction proceedings when Eubanks failed to raise this issue on direct appeal, Eubanks also did not object to this issue at trial. Because he failed to object at trial, he must show fundamental error to prevail. *Moore v. State*, 673 N.E.2d 776, 780 (Ind.

---

1. The State contends that it did assert waiver at the post-conviction proceedings, and thus argues that the affirmative defense is preserved on appeal. While the State acknowledges that it did not plead waiver below, it contends that it preserved waiver through a statement of law in its proposed findings of fact and conclusions of law. We disagree. A simple statement of the nature of post-conviction relief is inadequate to preserve a claim of waiver.

2. While the court used the language "reversible error" in its judgment, we conclude that the trial court applied the fundamental error standard to Eubanks' claim. In its conclu-

sions of law, the trial court stated: "The Prosecutor's calling of the two co-conspirators in the presence of the jury, knowing that they would refuse to testify by invoking their Fifth Amendment right to silence, and without offering either immunity to compel their testimony, was *reversible error*. This is so despite the defense counsel's failure to object to the calling or questioning of the witnesses, and his failure to request an admonishment." PCR Record at 96 (emphasis added). Given the trial court's acknowledgement that no objection was made and no instruction was requested, the court applied the fundamental error standard of review.

Ct.App.1996) ("When confronted with a challenged instruction not objected to at trial, any error predicated on giving of the instruction will be considered waived unless the instruction rose to the level of fundamental error."). Eubanks contends, however, that reversible error is appropriate given the State's waiver. We disagree. To conclude that fundamental error was not the appropriate standard of review would grant to Eubanks a benefit to which he would not have been entitled on direct appeal. Specifically, had Eubanks raised the issue on direct appeal, he would have had to show fundamental error because he had not objected at trial. As we noted earlier, post-conviction proceedings are a narrow remedy and do not provide defendant with a super appeal. Thus, we must determine whether the court's conclusion that the witnesses' invocations of the Fifth Amendment resulted in fundamental error is clearly erroneous.

■ A fundamental error is a substantial, blatant violation of basic principles of due process rendering the trial unfair to the defendant. *Baird v. State,* 688 N.E.2d 911, 917 (Ind.1997), *cert. denied,* 525 U.S. 849, 119 S.Ct. 122, 142 L.Ed.2d 99 (1998). Our supreme court has repeatedly emphasized the limited applicability of the fundamental error doctrine. *See Taylor v. State,* 717 N.E.2d 90, 93 (Ind.1999) (collecting cases). In *Canaan v. State,* the court noted:

> [W]e view this exception [ (the fundamental error doctrine) ] as an extremely narrow one, available only when the record reveals clearly blatant violations of basic and elementary principles [of due process], and the harm or potential for harm [can]not be denied. While concerns over due process do sometimes merit invocation of a fundamental error exception to the contemporaneous objec-

tion rule on direct appeal, we think its availability as an exception to the waiver rule in post-conviction proceedings is generally limited to those circumstances we set forth in *Bailey v. State,* 472 N.E.2d 1260, 1263 (Ind.1985): "[D]eprivation of the Sixth Amendment right to effective assistance of counsel, or . . . an issue demonstrably unavailable to the petitioner at the time of his [or her] trial and direct appeal."

683 N.E.2d 227, 235–36 n. 6 (Ind.1997) (internal quotation and citation omitted), *cert. denied,* 524 U.S. 906, 118 S.Ct. 2064, 141 L.Ed.2d 141 (1998).

■ Eubanks contends that the prosecutor's act of calling witnesses to the stand knowing that they would invoke the Fifth Amendment was fundamental error. Eubanks relies on our supreme court's holding in *Borders v. State,* which held that "it is improper for the prosecutor to call as a witness a co-defendant when the prosecutor knows in advance that the witness will invoke the Fifth Amendment and refuse to testify." 688 N.E.2d 874, 879 (Ind.1997). Eubanks directs us to *Tucker v. State,* 534 N.E.2d 1110 (Ind.1989), and *Aubrey v. State,* 261 Ind. 692, 310 N.E.2d 556 (1974), in which the court reversed petitioners' convictions where the State called accomplices to testify knowing they would invoke the Fifth Amendment.

While we agree with Eubanks that it is improper for prosecutors to knowingly call witnesses who will invoke the Fifth Amendment on the stand, we find his reliance on *Tucker* and *Aubrey* misplaced. In those cases, the court reversed the convictions based on the trial court's refusal to give the defendant's requested instruction regarding the witnesses' invocations of the Fifth Amendment. Here, Eubanks' counsel did not request an admonishment.[3]

---

**3.** Eubanks argues that the failure to give an instruction or admonishment was fundamental error because this court held in *Aubrey* that such failure was reversible error when a defendant preserved an objection at trial. We find Eubanks' argument unpersuasive.

"Such a holding would require that a reversible error equates to a fundamental error whenever the defendant fails to enter a proper and timely objection at trial. That would, of course, obviate the contemporaneous objection rule." *Lacey,* 670 N.E.2d at 1303.

Therefore, *Aubrey* and *Tucker* are not controlling. *See Gurley v. State*, 264 Ind. 552, 348 N.E.2d 16, 20 (1976) (noting that while reversal was appropriate in *Aubrey* because the court refused an instruction to which the petitioner was entitled, reversal was not appropriate in *Gurley* because the petitioner did not request an instruction and the court is not required to give one sua sponte). Generally, courts have not held that it is fundamental error per se whenever a prosecutor calls a witness to the stand knowing the witness will invoke the Fifth Amendment. *See, e.g., Hovis v. State*, 455 N.E.2d 577, 581 (Ind.1983) (stating that admonishment cured any prejudice arising from witness's invocation of the Fifth Amendment); *see also Namet v. United States*, 373 U.S. 179, 83 S.Ct. 1151, 10 L.Ed.2d 278 (1963) (stating that given the limited nature of questioning and cumulative effect of invocation, any error in calling witnesses who invoked their Fifth Amendment rights was not plain error [4]); *State v. Cota*, 102 Ariz. 416, 432 P.2d 428 (1967) (noting that witness's invocation of the Fifth Amendment was not reversible error).

The U.S. Supreme Court has also specifically addressed this issue in *Namet v. United States*, 373 U.S. 179, 83 S.Ct. 1151, 10 L.Ed.2d 278 (1963), and we find the *Namet* analysis instructive in the case at bar. In *Namet*, the Supreme Court concluded that the trial court did not commit prejudicial error by permitting the prosecutor to knowingly elicit an assertion of the Fifth Amendment privilege from two key witnesses in the presence of the jury. There, the defense counsel also failed to object to the calling of the witnesses; neither did counsel request an instruction or admonishment regarding the witnesses' in-

vocation of their Fifth Amendment rights. The Court indicated that in order to determine whether prejudicial error had occurred, courts should examine the particular circumstances involved in each case focusing on two factors, which raise distinct grounds of error. First, the Court stated that error may result from prosecutorial misconduct when the government makes a "conscious and flagrant" attempt to build its case out of inferences arising from the witness's assertion of the privilege. *Namet*, 373 U.S. at 186, 83 S.Ct. at 1154. Second, the Court suggested that prejudicial error may also be committed where inferences from a witness's refusal to testify add "critical weight to the prosecution's case." *Id.* at 187, 83 S.Ct. at 1155.

Here, although the prosecution knew the witnesses would invoke the Fifth Amendment, there is no evidence that the State attempted to build its case out of inferences. While the record does not disclose the prosecutor's actual motivation in calling the witnesses, there is no indication that the State relied on their assertions of the privilege to establish the elements of the offenses. The prosecutor did, as the defense points out, refer to the witnesses' refusals to testify in closing argument.[5] Record at 1323, 1360. The only comment made by the prosecutor in reference to the State's witnesses, Beverly Heard and Tony Worl, was that their involvement was initiated by Eubanks. Eubanks' own testimony supports this statement. Eubanks testified that Worl was somewhat reluctant to get involved. Record at 1141–42. He further testified that he contacted Beverly to inform her of her husband's infidelity and then offered to scare him for her. Record at 1130–31, 1136–37.

4. The U.S. Supreme Court's term "plain error" is the equivalent of Indiana's "fundamental error." *See* Fed.R.Crim.P. 52(b) ("Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.").

5. "Now, Tony Worl was here to testify, just as was Beverly Heard, and they both took the

Fifth Amendment, which is their privilege." Record at 1323. "We had some people testify that couldn't tell their story, they're under the Fifth Amendment. That is, Beverly Heard and that is Tony Worl. Both of which, their involvement in this was initiated by the Defendant, meaning phone calls, meaning bringing the gun to Tipton." Record at 1360.

Moreover, the testimony did not add critical weight to the prosecution's case. In building its case, the State called eighteen witnesses. Of those witnesses, two invoked the Fifth Amendment: Beverly and Worl. Upon calling Beverly to the stand, the prosecutor asked her: "[O]n October 19th, 1992, did you have occasion to be at your residence in Tipton County, Indiana?" Record at 852. Beverly invoked the Fifth Amendment and the prosecutor ceased his questioning. When the State called Worl to the stand, the prosecutor inquired: "[O]n October 19, 1992, were you in the company of Tony Eubanks?" Record at 849. Worl invoked the Fifth Amendment. The prosecutor also asked Worl: "[A]ssuming that, and no disrespect for your exercise of constitutional right, but, you so stand on that right as to each and any question that I would ask in regard to any incident involving the October '92?" Record at 850. Upon which, Worl answered in the affirmative and the prosecutor ceased questioning. Given the limited questioning of the prosecutor in relation to the substantial number of witnesses presented, this was a "minor lapse" that did not harm Eubanks. *See Namet*, 373 U.S. at 187, 83 S.Ct. at 1155.

Furthermore, as a panel of this court found on direct appeal, there was overwhelming evidence of Eubanks' guilt: Eubanks was angry and jealous because of the victim's relationship with his ex-girlfriend, Scott; he harassed Darrell Heard and Scott by following them and driving by their homes on repeated occasions; in conversations with Scott, Eubanks threatened to put a gun to Darrell's head if he continued to see Scott; and Eubanks pointed a .22 caliber handgun at Darrell Heard and kept it trained on his upper body while Eubanks' friend stood by with a .12 gauge shotgun. Thereafter, Eubanks shot Heard in the head and killed him in the presence of witnesses. *See Eubanks v. State*, 643 N.E.2d 994 (Ind.Ct.App.1994).

Any adverse inference that could be drawn from Beverly's and Worl's invocations is merely cumulative. We conclude that given the limited nature of the prosecutor's questions, the cumulative effect of the witnesses' Fifth Amendment invocations, and the substantial testimony presented by the other witnesses, Eubanks was not deprived of a fair trial.

Consequently, we conclude that any error committed in allowing Beverly and Worl to invoke their Fifth Amendment rights before the jury did not result in prejudice to Eubanks. *See Bernard v. State*, 174 Ind.App. 251, 255, 367 N.E.2d 20, 23 (1977) (holding that it was not error for the court to allow the State to call accomplice to testify even though the State knew the accomplice was likely to plead the Fifth where defense counsel did not object and other evidence established the inference raised by accomplice's refusal to testify). While we disapprove of the State's tactics in calling the witnesses, we do not conclude that such action rises to fundamental error in the face of overwhelming evidence of defendant's guilt. Thus, we conclude the trial court's grant of relief was clearly erroneous.

## II. Defendant's Appeal: Ineffective Assistance of Counsel

Having concluded that Eubanks was not entitled to relief under the fundamental error doctrine, we must now address Eubanks' cross-appeal to determine if he is entitled to relief on alternate grounds. Eubanks contends that the post-conviction court erred in finding that he received effective assistance of counsel. Specifically, he asserts that his counsel was ineffective for failing to object to the prosecutor's actions in calling Beverly and Worl and failing to request an admonishment to the jury.

We will reverse the denial of post-conviction relief only if the evidence as a whole leads unerringly and unmistakably to a decision opposite that reached by the post-conviction court. *Woods v. State*, 701 N.E.2d 1208, 1210 (Ind.1998), *cert. de-*

nied, — U.S. ——, 120 S.Ct. 150, 145 L.Ed.2d 128 (1999). We analyze claims of ineffective assistance of counsel under the two-part test announced in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The petitioner must show both deficient performance and resulting prejudice. *Rouster v. State,* 705 N.E.2d 999, 1003 (Ind.1999), *reh'g denied.* Prejudice exists when a petitioner shows there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Id.*

 Even if we assume error was committed when trial counsel failed to object to the witnesses' invocations of the Fifth Amendment or failed to request an admonishment to the jury,[6] we conclude that Eubanks was not prejudiced. As discussed above, the evidence against Eubanks was overwhelming while the prosecutor's questions were minimal. Given the evidence of Eubanks' guilt, we cannot say the results of the trial would have been different had Beverly and Worl not asserted their Fifth Amendment rights. The trial court was correct when it determined that Eubanks received effective assistance of trial counsel. We cannot state that the evidence leads unerringly and unmistakably to a conclusion opposite that reached by the trial court. Therefore, we affirm the post-conviction court's denial of relief on the ground of ineffective assistance of counsel.

Because we find that Eubanks received effective assistance of counsel and it was not fundamental error for the witnesses to invoke their rights against self-incrimination, the grant of post-conviction relief to Anthony Eubanks is reversed and the murder and criminal confinement convictions are reinstated.

Judgment reversed.

FRIEDLANDER, J., concurs.

6. We note our Supreme Court recently addressed this same issue on direct appeal in *Johnson v. State,* 719 N.E.2d 812 (Ind.1999). In *Johnson,* as in the case at bar, the defense counsel failed to object or request a limiting

DARDEN, J., dissents with separate opinion.

### DARDEN, Judge, dissenting

I respectfully dissent as to both issues.

### I. *Fundamental Error*

Eubanks contends that the prosecutor's act of calling witnesses to the stand knowing that they would invoke the Fifth Amendment was fundamental error. I agree.

The United States Supreme Court addressed this issue in *Namet v. United States,* 373 U.S. 179, 83 S.Ct. 1151, 10 L.Ed.2d 278 (1963), wherein the Court stated that in order to determine whether prejudicial error has occurred, courts should examine the particular circumstances involved in each case focusing on two factors which raise distinct grounds of error. First, error may result from prosecutorial misconduct when the government makes a "conscious and flagrant" attempt to build its case out of inferences arising from the witness' assertion of privilege. 373 U.S. at 186, 83 S.Ct. at 1154. Second, prejudicial error may also be committed where inferences from a witness' refusal to testify add "critical weight to the prosecution's case." 373 U.S. at 187, 83 S.Ct. at 1155.

As to the first prong, the majority states that "although the prosecution knew the witnesses would invoke the Fifth Amendment, there is no evidence that the State attempted to build its case out of the inferences." Op at 207. I disagree.

At the outset, I note that long-standing rule of law that it is error to call a witness to testify with knowledge that he will invoke the Fifth Amendment. *Tucker v.*

instruction following a witness's refusal to testify. The court concluded that the decision of whether to request a limiting instruction was a strategic choice.

*State,* 534 N.E.2d 1110, 1111 (Ind.1989). In *Aubrey v. State,* 261 Ind. 692, 310 N.E.2d 556, 559 (1974), our supreme court explained that the "natural, even inevitable, inference which is raised in the jury's mind when *an alleged accomplice refuses to testify* is that the withheld testimony would be damaging, not only to the witness, but also to the defendant. Thus, the mere refusal to speak indelibly implants adverse inferences in the minds of jurors and reaches them in a form not subject to cross-examination." (Emphasis in original).

Here, the prosecutor called Eubanks' accomplices to the stand with knowledge that they would refuse to testify and invoke their Fifth Amendment right to silence. The prosecutor did not offer either witness immunity pursuant to Ind.Code § 35–37–3–1,[7] and the questioning of the witnesses occurred in the presence of the jury. The only motive that the prosecutor could have possibly had for calling these witnesses was to plant adverse inferences in the minds of the jurors. Thereafter, the prosecutor made a "conscious and flagrant" attempt to build its case out of inferences arising from the witnesses' assertions of privilege as evidenced by the fact that during closing argument, the prosecutor twice mentioned the accomplices' failure to testify.

As to the second prong, the majority states that the "testimony did not add critical weight to the prosecution's case." Op at 207. Again, I disagree.

The majority relies on the fact that the State called 18 witnesses, only two of which – Beverly and Worl – invoked the

Fifth Amendment. I find this reliance to be misplaced. Beverly and Worl were the only accomplices. Beverly was an eyewitness to the offense. Their testimony, or lack thereof, added critical weight to the prosecutor's case. The prosecutor should not be permitted to flagrantly manipulate a potential witness' testimony.

Under the circumstances of this case, I agree with Eubanks that fundamental error occurred. I would therefore affirm the post-conviction court's decision to vacate Eubanks' convictions and remand for a new trial.

## II. *Ineffective Assistance of Counsel*

I further believe that Eubanks' counsel was ineffective for failing to object to the prosecutor's actions in calling Beverly and Worl and failing to request an admonishment to the jury. To establish a violation of the Sixth Amendment right to effective assistance of counsel, the defendant must show that (1) counsel's performance fell below an objective standard of reasonableness based on prevailing professional norms; and (2) there is a reasonable probability that because of counsel's errors the result of the proceeding is unreliable or unfair. *Harrison v. State,* 707 N.E.2d 767, 777 (Ind.1999), *cert. denied,* —— U.S. ——, 120 S.Ct. 1722, 146 L.Ed.2d 643 (2000). A "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* (quoting *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)).

First, Eubanks' counsel was clearly ineffective for failing to object to the prosecutor's actions in calling Beverly and Worl to

---

7. I.C. § 35–37–3–1 provides as follows:
 (a) If a witness, in any hearing or trial occurring after an indictment or information has been filed, refuses to answer any question or produce any item, the court shall remove the jury, if one is present, and immediately conduct a hearing on the witness's refusal. After such a hearing, the court shall decide whether the witness is required to answer the question or produce the item.

 (b) If the prosecuting attorney has reason to believe that a witness will refuse to answer a question or produce an item during any criminal trial, the prosecuting attorney may submit the question or request to the trial court. The court shall hold a hearing to determine if the witness may refuse to answer the question or produce the item.

testify. In order to establish that counsel's failure to object was ineffective assistance of counsel, a defendant must first prove that a proper objection would have been sustained. *Potter v. State,* 684 N.E.2d 1127, 1132 (Ind.1997). Here, had Eubanks' counsel objected to the prosecutor's actions, the trial court would have been required to sustain the objection. *See Tucker,* 534 N.E.2d at 1110 (trial court erred in allowing witness to be called before the jury when all parties knew he would invoke the Fifth Amendment). Further, had Eubanks' counsel requested an admonishment, the trial court would have been required to give it. *See Aubrey v. State,* 261 Ind. 692, 310 N.E.2d 556 (1974)(failure to admonish jury when requested constitutes reversible error). Eubanks' counsel's performance was clearly deficient.

We now turn to the prejudice prong. The majority summarily concludes that Eubanks was not prejudiced because the "evidence against him was overwhelming...." Op at 209. I disagree with both conclusions.

First, the evidence as to Eubanks' intent was not overwhelming. My review of the record reveals that he has consistently maintained that he did not intend to kill the victim. Rather, according to Eubanks, the gun accidentally went off when Beverly attempted to take the gun from him after they had scared the victim into confessing his infidelities. Witness Jodi Scott also testified that Eubanks told her that he had only intended to scare the victim with a gun.

Second, Eubanks was prejudiced by the prosecutor's act. The majority has failed to consider the effect of the prosecutor's actions on Eubanks' possible defenses. Eubanks has consistently stated that the shooting was an accident. This defense raises a host of lesser included offenses, including voluntary manslaughter, involuntary manslaughter and reckless homicide. However, before Eubanks had the opportunity to testify and present his defense, the prosecutor undercut it by calling Beverly and Worl to the stand knowing that they would invoke the Fifth Amendment. When the jury saw accomplices Beverly and Worl refuse to testify, the inevitable inference was that their testimony would have been damaging to each of them as well as to Eubanks thereby prejudicing him.

Under the facts and circumstances of this case, I find that counsel's performance was deficient and that there is a reasonable probability that because of counsel's errors, the result of the proceeding was unfair. I would therefore vacate Eubanks' convictions and remand for a new trial.