Michael L. OWENS, Appellant–
Petitioner,

v.

STATE of Indiana, Appellee–
Respondent.

No. 49A02–0011–PC–722.

Court of Appeals of Indiana.

June 14, 2001.

Susan K. Carpenter, Public Defender of Indiana, Tracy A. Nelson, Deputy Public Defender Indianapolis, IN, Attorneys for Appellant.

Steve Carter, Attorney General of Indiana, Eileen Euzen, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

KIRSCH, Judge.

Michael Owens was convicted of burglary,[1] a Class B felony, two counts of robbery,[2] as Class C felonies, and two counts of criminal confinement,[3] as Class D felonies. He appealed and this court affirmed his convictions in *Owens v. State*, No. 49A02–9201–CR–8, 604 N.E.2d 1265 (Ind. Ct.App. Dec.2, 1992). Thereafter, he filed a petition for post-conviction relief. He now appeals the post-conviction court's de-

nial of his petition and raises three issues for our review, which we consolidate and restate as follows:

I. Whether the trial court committed fundamental error when it questioned witnesses and ordered further investigation after both the State and Defense had rested.

II. Whether Owens received ineffective assistance of trial and appellate counsel.

We reverse and remand for a new trial.

## FACTS AND PROCEDURAL HISTORY

On the night of January 18, 1991, an intruder robbed Leo and Frances Ebbing in their home, stealing a VCR, jewelry, cash, and various securities. Owens was arrested for the crimes and a bifurcated bench trial was conducted.[4] The State presented three witnesses and then rested on September 5, 1991.

Owens and his sister Victoria were witnesses for the Defense. Owens testified that his friend Tyrell Briggs had committed the crimes. During his testimony, Owens said that Briggs came to his house early in the evening of January 18 asking for a ride to his sister's apartment. Although Owens was unable to provide the ride, he agreed to lend Briggs a coat for the cold twelve-block walk. *T.R.* at 129–30.[5]

---

1. *See* IC 35–43–2–1.

2. *See* IC 35–42–5–1.

3. *See* IC 35–42–3–3.

4. Owens became a suspect under the following circumstances. Late in the night of January 18, 1991, Ethyl Wells, a neighbor living a block away from the Ebbings, allowed a man to make a telephone call from her apartment. The man left his coat in her apartment when he departed. Wells then went outside and told the security guard at her apartment complex about the man and was informed that a burglary had just occurred in the neighborhood. Wells immediately called the police who came, investigated, and searched the coat. In the pockets of the coat, the police found the Ebbings' jewelry and Owens's personal address book.

5. The record of proceedings in the trial court will be identified in this opinion as "T.R." and the record of proceedings in the post-conviction court as "Record."

Owens and Victoria both testified that they were talking to each other on the telephone when the crimes were being committed. *Id.* at 132, 168–70. Owens further testified that, during their conversation, he received a call on the other line from Briggs. Briggs told Owens that he had made a "sting" and needed a ride. *Id.* at 132–33. In trying to arrange a second ride for Briggs, Owens discovered that his address book was in the coat he had lent Briggs. Owens asked Briggs to find the address book, but Briggs stated that he had stashed the coat at his apartment complex and refused to get it.[6] *Id.* at 134.

Owens testified that he arranged a ride for Briggs with Freddie Willis, but became worried that his address book in the stashed coat would implicate him. Owens then went to the apartment complex to retrieve his coat. After finding the coat, and while on his way to Briggs's apartment, Owens noticed a security guard. Not wanting Willis to become involved, Owens stopped at Ethyl Wells's[7] apartment, asked to use the phone, and called to warn Freddie Willis to stay away. *Id.* at 138–40. When he left, Owens left his coat in Wells's apartment.

The trial court asked Owens's attorney if she had obtained the telephone records to verify the various telephone calls. *Id.* at 170. When trial counsel said she had not, the trial court said it would give her an opportunity to get the records and supplement the evidence. *Id.* at 171–72.

Owens testified that when he was arrested, he told Detective Breen that Briggs had committed the crimes and gave Breen "his name and everything." *Id.* at 143. When Breen did not contact Owens, his sister Victoria left four or five messages with Breen requesting that Breen talk with Owens. *Id.* Breen never contacted Owens about the lead.

After both the State and Defense had rested, the trial court recalled the investigating officer, Officer Frances Ingram, to the stand and questioned him. During the questioning it was revealed that no one had ever investigated whether Briggs lived where Owens had indicated. The judge then stated, "I feel that the evidence is incomplete at this particular point. I would like to know because the Defendant has given very specific directions here as to this person ... did anybody run a prior rap sheet on a Tyrell Briggs?" *Id.* at 180. The prosecutor responded that Breen, who was absent from the trial because of medical leave, had run a rap sheet on Briggs and had found nothing. *Id.* The trial court then ordered the parties to investigate whether, on the night of the robbery, Briggs lived in the same apartment complex as Wells. The judge further ordered the Defense to obtain telephone records. *Id.* at 181.

During the State's case-in-chief, Ingram testified that he used a redial feature on Wells's phone to call the person to whom Owens spoke on the night of the robbery. *Id.* at 105. Ingram testified that, using the redial feature; he reached a man named Earl Willis, Freddie's father. After both parties rested, the trial court followed up on this information by questioning Ingram. Ingram testified as to his conversation with Earl as follows: "He stated that he had received a call from an individual he identified to me as Kelly Owens and that he was very nervous and

---

6. Briggs allegedly lived in the same apartment complex as Wells.

7. Ms. Wells's first name is spelled "Ethel" in the Affidavit for Probable Cause. *Trial Rec-* ord at 18. We have used "Ethyl" because that is the spelling in the trial transcript and the Memorandum Decision. *Id.* at 87; *Appellee's Brief* at 2.

that he needed a ride but that he could not provide one." *Id.* at 182.

After these follow-up questions, the trial court stated that it would take the matter under advisement to allow the parties to do more investigation. *Id.* at 182–83. The trial judge said that Owens had told "a pretty interesting story. Now if this was the Olympics we would have to give it about a nine and a half." *Id.* at 183–84.

At the trial court's request, the parties returned on September 19, 1991—two weeks after having rested their cases— with the additional information requested. Upon hearing the additional evidence, the trial court convicted Owens of burglary, two counts of robbery, and two counts of criminal confinement, and sentenced him to fifteen years' imprisonment. His conviction was affirmed on direct appeal after new appellate counsel raised a sufficiency challenge. Owens then filed for post-conviction relief, and, after a delay of over three years, post-conviction relief was denied.[8] Owens now appeals.

## DISCUSSION AND DECISION

■ Owens appeals from a negative judgment by the trial court on his motion for post-conviction relief. A post-conviction petition under Ind. Post Conviction Rule 1 is a quasi-civil remedy and, as such, the petitioner bears the burden of proving by a preponderance of the evidence that he is entitled to relief. Ind. Post Conviction Rule 1(a)(5); *Lambert v. State,* 743 N.E.2d 719, 726 (Ind.2001); *Prowell v. State,* 741 N.E.2d 704, 708 (Ind.2001). Owens must now convince this court that the evidence as a whole leads unerringly and unmistakably to a decision opposite that reached by

the post-conviction court. *Lambert,* 743 N.E.2d at 726; *Prowell,* 741 N.E.2d at 708; *State v. Eubanks,* 729 N.E.2d 201, 205 (Ind.Ct.App.2000), *trans. denied.*

■ The purpose of a petition for post-conviction relief is to provide a means for raising issues unknown or unavailable to a defendant at the time of the original trial and appeal. *Eubanks,* 729 N.E.2d at 204. Post-conviction procedures do not afford the petitioner with a "super appeal." *Lambert,* 743 N.E.2d at 726; *Eubanks,* 729 N.E.2d at 204. When the petitioner has been afforded the benefit of a direct appeal, post-conviction relief contemplates a rather small window for further review. *Eubanks,* 729 N.E.2d at 204. Thus, in general, if an issue was available on direct appeal but not litigated, it is deemed waived. *Rouster v. State,* 705 N.E.2d 999, 1003 (Ind.1999).

■ As to Owens's first issue, the trial court questioned witnesses and requested that the parties undertake additional discovery after the State and Defense had presented all their evidence. Trial counsel did not object to the court's actions and appellate counsel did not raise the error on direct appeal. Thus, the issue would ordinarily be waived. However, in order to avoid waiver, Owens alleges that he should be granted post-conviction relief because the trial court's actions constituted fundamental error. *See Bigler v. State,* 732 N.E.2d 191, 194 (Ind.Ct.App.2000), *trans. denied* (exceptions to waiver will be made when the claimed error is fundamental).

■ Fundamental error is a substantial blatant violation of basic principles rendering the trial unfair and depriving

---

8. Owens filed a pro-se petition for post-conviction relief on October 20, 1993 and an amended petition on January 9, 1997. *Record* at 27, 38. An evidentiary hearing was held on February 25, 1997. *Id.* at 80–91. The

post-conviction court issued its order on September 5, 2000, *id.* at 67–69, but only after Owens requested a ruling in his July 28, 2000 Verified Motion for Ruling. *Id.* at 76.

the defendant of fundamental due process. *Taylor v. State,* 717 N.E.2d 90, 93 (Ind. 1999); *Ellison v. State,* 717 N.E.2d 211, 213 (Ind.Ct.App.1999), *trans. denied; see also Conner v. State,* 711 N.E.2d 1238, 1246 (Ind.1999), *cert. denied,* 531 U.S. 829, 121 S.Ct. 81, 148 L.Ed.2d 43 (2000) (error must be so prejudicial to the rights of the defendant as to make a fair trial impossible). Our supreme court has noted that the doctrine of fundamental error is only available in very narrow circumstances. *Taylor v. State,* 717 N.E.2d at 94; *Poling v. State,* 740 N.E.2d 872, 880 n. 5 (Ind.Ct. App.2000). Even the denial of specific constitutional rights does not always prevent waiver. *Poling,* 740 N.E.2d at 880 n. 5.

In post-conviction review, fundamental error only prevents waiver of Sixth Amendment claims of ineffective assistance of counsel or of issues clearly unavailable at trial or on direct appeal. *Taylor,* 717 N.E.2d at 94; *Poling,* 740 N.E.2d at 880 n. 5. Because the alleged fundamental error of the trial court's actions was available to Owens on direct appeal, we address them only as they arise through his Sixth Amendment claims of ineffective assistance of trial and appellate counsel.

Owens next alleges that his trial counsel and appellate counsel were ineffective for failing to object to these fundamental errors at trial and raise them in Owens's direct appeal.[9] We agree. The Sixth Amendment to the Constitution of the Unites States guarantees the right of a defendant in a criminal case to the effective assistance of counsel. *Latta v. State,* 743 N.E.2d 1121, 1125 (Ind.2001) (citing *Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984)).

When reviewing a claim of ineffective assistance of counsel, we initially presume that counsel's representation was within the wide range of reasonable professional assistance. *Wine v. State,* 637 N.E.2d 1369, 1378 (Ind.Ct.App.1994), *trans. denied* (citing *Geans v. State,* 623 N.E.2d 435, 438 (Ind.Ct.App.1993)). The test to be applied when ineffective assistance of counsel is alleged is two-pronged. *Davenport v. State,* 689 N.E.2d 1226, 1231 (Ind.1997), *modified on reh'g on other grounds,* 696 N.E.2d 870 (Ind.1998). First, the defendant must prove that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms, and, second, " 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine the confidence in the outcome.' " *Lambert,* 743 N.E.2d at 730 (citing *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693).

The United States Supreme Court has determined that the Constitution mandates an adversarial form of procedure in crimi-

---

**9.** The State asserts that because Owens's conviction and direct appeal occurred before the supreme court decided *Woods v. State,* 701 N.E.2d 1208 (Ind.1998), Owens is unable to proceed with a claim of ineffective assistance of trial counsel. Before *Woods,* a claim of ineffective assistance of trial counsel was waived if not raised on direct appeal. *Woods* held that a Sixth Amendment claim of ineffective assistance of trial counsel may be presented for the first time in a petition for post-conviction relief. Although the State cites to *McIntire v. State,* 717 N.E.2d 96, 102 (Ind. 1999) to support the proposition that *Woods* is to be applied prospectively, we note that since *McIntire* was decided, our supreme court has applied *Woods* retroactively on at least two occasions. *Prowell,* 741 N.E.2d at 708; *Coleman v. State,* 741 N.E.2d 697, 700 (Ind.2000). We, therefore, allow Owens to raise his ineffective assistance of trial counsel claim for the first time in post-conviction review.

nal cases. STEPHAN LANDSMAN, READINGS ON ADVERSARIAL JUSTICE: THE AMERICAN APPROACH TO ADJUDICATION 1 (1988). "The adversary process assigns each participant a single function. The judge is to serve as neutral and passive arbiter. Counsel are to act as zealous advocates." *Id.* at 35. If this division is not adhered to, the danger is that the judge will abandon his neutrality if encouraged to search for material truth and that the attorney will compromise his client's interests if forced to serve as an officer of the court rather than an advocate. *Id.* "In either case, the probity of the process is seriously undermined." *Id.*

Our supreme court has noted that a judge may intervene to promote clarity or to aid in the advancement of the proceedings. *McCord v. State,* 622 N.E.2d 504, 511 (Ind.1993); *Garcia v. State,* 517 N.E.2d 402, 405 (Ind.1988) (trial court properly intervened to halt repetitive questions). Nevertheless, in high volume criminal courts where the danger is ever present that the roles of the court and counsel will be melded, "it is essential to the fair administration of justice that those roles be restrained to their proper spheres." *Brooks v. State,* 526 N.E.2d 1171, 1172 (Ind.1988); *see also Isaac v. State,* 605 N.E.2d 144, 148 (Ind.1992) (a trial judge may not assume an adversarial role); *Beatty v. State,* 567 N.E.2d 1134, 1136 (Ind.1991) (a trial judge must maintain an impartial manner and refrain from acting as an advocate for either party); *Whitehead v. State,* 511 N.E.2d 284, 291 (Ind. 1987), *cert. denied,* 484 U.S. 1031, 108 S.Ct. 761, 98 L.Ed.2d 773 (1988) (judge has a duty to remain impartial and improperly interjected himself into voir dire by assuming the role of an advocate); *but see In re Commitment of Roberts,* 723 N.E.2d 474, 476 (Ind.Ct.App.2000) (court noted in civil commitment case that most restrictions on

the court's power to examine witnesses are relaxed in trials to the court). A " 'fair trial by an impartial judge and jury is an essential element in due process.' " *Decker v. State,* 515 N.E.2d 1129, 1131 (Ind.Ct. App.1987) (quoting *Kennedy v. State,* 258 Ind. 211, 218, 280 N.E.2d 611, 615 (1972)); *see In re Commitment of Roberts,* 723 N.E.2d at 476 (a violation of due process occurs where a trial judge combines the roles of judge and advocate).

Here, it is clear that the trial judge acted as an advocate and intervened in the proceedings. After the parties had rested, he asked questions and ordered additional investigation. Through this questioning he allowed inadmissible hearsay to be introduced by Ingram and the prosecutor—a person who was not and could not be a witness against Owens. Furthermore, the evidence that was introduced impeached Owens's testimony because the telephone records were void of any calls being made between Owens and Victoria on the night of the robbery, and the apartment records did not contain evidence that Briggs had lived at the complex in 1991.

The judge's actions appear plainly in the trial record. Because the adversarial system is built on the premise that the judge serves as a neutral and passive arbiter, trial counsel's failure to object to the judge's actions caused her representation to fall below an objective standard of reasonableness under prevailing professional norms. Furthermore, appellate counsel's failure to raise these issues on direct appeal caused her representation to fall below an objective standard of reasonableness.

We also find that the errors by trial and appellate counsel were so serious that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. The presumption at trial is that

the defendant is innocent. That presumption is maintained unless the State proves that the defendant is guilty beyond a reasonable doubt of every essential element of the crimes charged. *Edgecomb v. State,* 673 N.E.2d 1185, 1197 (Ind.1996). At the time the parties rested, the trial judge was still not convinced beyond a reasonable doubt that Owens had committed the crimes. The judge stated, "the evidence is incomplete at this particular point" and indicated that he wanted to know more because Owens had given very specific testimony as to Briggs. *T.R.* at 180. He also said that Owens had told a pretty interesting story and that if this was the Olympics, he would have given him a score of nine and a half. *Id.* at 183–84. By requiring the parties to engage in additional discovery and return two weeks later to report their findings, the trial judge overstepped his bounds as a neutral arbiter. Failure to object at trial made trial counsel's actions ineffective while failure to raise these issues on direct appeal made appellate counsel's actions ineffective.

We reverse the denial of post-conviction relief and remand for a new trial.

SHARPNACK, C.J., and
MATTINGLY–MAY, J., concur.