**Charles MILLER, Superintendent, Appellant–Respondent,**

v.

**Glenn L. BRYANT, Appellee–Petitioner.**

No. 48A02–9401–CV–24.

Court of Appeals of Indiana, Second District.

Dec. 15, 1994.

Transfer Denied March 24, 1995.

Pamela Carter Atty. Gen. of Indiana and David L. Steiner, Deputy Atty. Gen., Indianapolis, for appellant.

Patrick R. Ragains and Montague M. Oliver, Jr., Oliver and Associates, Anderson, for appellee.

## OPINION

FRIEDLANDER, Judge.

Charles Miller, Superintendent of the State of Indiana Department of Corrections, appeals the decision of the Madison Circuit Court granting Glenn L. Bryant's Petition for Habeas Corpus and ordering Bryant's immediate release from the Correctional Industrial Complex in Madison County (the CIC). Miller presents the following restated issues for review:

I. Did the Madison Circuit Court have jurisdiction to rule upon Bryant's petition for habeas corpus?

II. Is Bryant eligible for sentence reduction pursuant to Ind.Code 35–50–6–3.3?

We reverse.

On April 27, 1989, Bryant was convicted of robbery. Judgment of conviction was entered by the Allen Superior Court and Bryant received a ten-year executed sentence. At the time of commencement of this appeal, Bryant was incarcerated at CIC. While incarcerated, Bryant attained an associate's degree from Ball State University. Bryant completed the last class necessary for the degree on May 7, 1993. On June 30, 1993, Bryant submitted his application for graduation and subsequently received his degree on July 23, 1993.

Bryant requested additional credit time for having earned his degree, pursuant to Ind. Code 35–50–6–3.3. The Department of Corrections (DOC) determined that Bryant did not satisfy the requirements of I.C. 35–50–6–3.3 and denied his request. On September 1, 1993, Bryant filed a Petition For Writ of Habeas Corpus in the Madison Circuit Court, contending that the DOC had erred in determining that Bryant's sentence could not be reduced pursuant to I.C. 35–50–6–3.3. The Madison Circuit Court granted Bryant's petition and ordered him discharged. The DOC, through Miller, appeals.

I.

Miller contends that the Madison Circuit Court was without jurisdiction to rule upon Bryant's petition because it was not the court that entered judgment and pronounced sentence. In support of his argument, Miller cites *Miller v. Lowrance* (1994), Ind., 629 N.E.2d 846 and Ind. Post–Conviction Rule 1(1)(c).

In *Lowrance*, the appellee was convicted and sentenced in Vanderburgh County. Lowrance, who was incarcerated at CIC, subsequently filed a petition for writ of habeas corpus in the Madison Circuit Court, contending that he was being held pursuant to a void judgment of conviction, sentence, and commitment order. The Madison County Circuit Court granted the petition and the DOC appealed. The Supreme Court took jurisdiction of the appeal and determined that the Madison Court lacked jurisdiction to rule upon the petition, stating:

"Appellee's petition for writ of habeas corpus attacks the validity of his conviction and sentence which both serve as the basis for the confinement in the Correctional Industrial Complex. Therefore, it falls within the parameters of P–C.R.1(1)(c) of the Indiana Rules of Procedure which clearly requires the Madison Circuit Court to transfer the petition to the Vanderburgh Circuit Court. The Madison Circuit Court only had jurisdiction to receive the filing of the petition and transfer the cause to the

court where the petitioner was convicted or sentenced. [Citation omitted]. *Lowrance, supra,* 629 N.E.2d at 847.

The court further noted that state courts in counties in which prisons are located have no jurisdiction to examine or review final judgments rendered by courts in other counties, but instead must give such judgments full faith and credit until the judgment is set aside by appeal or through a direct proceeding brought in the rendering court. Miller contends that *Lowrance* established as a matter of law that "any questions relating to a person's criminal conviction and sentence must be considered by the court of conviction." Brief of Appellant at 8. Miller's interpretation of *Lowrance*'s meaning is overly broad.

P–C.R. 1(1)(c), upon which the *Lowrance* holding was based, states:

"This Rule does not suspend the writ of habeas corpus, but if a petitioner applies for a writ of habeas corpus, in the court having jurisdiction of his person, attacking the validity of his conviction or sentence, that court shall under this Rule transfer the cause to the court where the petitioner was convicted or sentenced, and the latter court shall treat it as a petition for relief under the Rule."

By its own terms, P–C.R. 1(1)(c) applies only in cases in which the petitioner utilizes a writ of habeas corpus to attack the "validity of his conviction or sentence." *Lowrance* provides an example of the rule's proper application; the petitioner sought to have his conviction and sentence vacated because they were not authorized by a person possessing proper judicial authority. In the instant case, however, Bryant does not seek to disturb the conviction or sentence entered by the Allen Superior Court. Rather, Bryant seeks judicial review of the DOC's determination that I.C. 35–50–6–3.3 does not operate to reduce Bryant's sentence. This determination is unrelated to the validity of Bryant's trial and sentencing. Thus, that which P–C.R. 1(1)(c) and *Lowrance* were intended to prohibit, i.e., a state court examining or reviewing the ruling or actions of a competent court of coordinate jurisdiction, is not present in the instant case.

The Madison Circuit Court had jurisdiction to decide whether I.C. 35–50–6–3.3 operates to reduce Bryant's sentence.

## II.

Miller contends that the trial court erred in ordering Bryant's immediate release.

Bryant had petitioned for immediate release based upon the contention that, by virtue of having received an associate's degree on July 23, 1993, and pursuant to I.C. 35–50–6–3.3, he was entitled to a one-year reduction in his sentence. I.C. 35–50–6–3.3 states, in pertinent part:

"(a) In addition to any credit time a person earns under section 3 of this chapter and in addition to any reduction of sentence a person receives under IC 35–38–1–23, a person earns credit time if:

(1) the person is in credit Class I; and

(2) the person successfully completes requirements to obtain one (1) of the following under IC 20–10.1–12.1–1(b)(1) or from an approved institution of higher learning (as defined under IC 20–12–21–3):

\*     \*     \*     \*     \*     \*

(C) An associates degree.

(b) The amount of credit time a person may earn under this section is the following:

\*     \*     \*     \*     \*     \*

(3) One (1) year for completion of an associate's degree.

\*     \*     \*     \*     \*     \*

(c) *A person does not earn credit time under subsection (a) unless the person completes at least a portion of the degree requirements after June 30, 1993.*" [Emphasis supplied.]

The DOC ruled that Bryant did not meet the requirement set out in subsection (c) because no portion of Bryant's degree was completed after June 30, 1993. The Madison Circuit Court reversed the DOC's ruling, concluding that Bryant " 'completed a portion of his degree requirement' after June 30, 1993 because he received his degree on July 23, 1993." *Record* at 47.

When deciding questions of statutory interpretation, we are not bound to give deference to the trial court's interpretation of the statute's meaning. *One 1968 Buick, 4 Door v. State* (1994), Ind.App., 638 N.E.2d 1313. Instead, we will independently determine the statute's meaning and apply it to the facts of the case under review. *Id.* In construing a statute's meaning, we may not interpret the meaning of a statute that is clear and unambiguous on its face. *Matter of Grissom* (1992), Ind., 587 N.E.2d 114. If a statute is ambiguous, however, we must ascertain the legislature's intent and interpret the statute so as to effectuate that intent. *Matter of Lawrance* (1991), Ind., 579 N.E.2d 32.

In the instant case, the DOC and Bryant disagree as to the meaning of the phrase "completes at least a portion of the degree" as set out in I.C. 35–50–6–3.3(c). The trial court concluded that Bryant had satisfied this requirement by virtue of having received the degree during the specified time period, i.e, after June 30, 1993. It is undisputed that the act of receiving the degree was the only aspect of Bryant's attainment of an associate's degree that occurred after June 30, 1993. The question presented is whether receiving the degree is "completing a portion of the degree".

The wording of the statute arguably supports either of the competing interpretations advocated by the parties. To resolve this ambiguity, we examine the legislature's intent in enacting the statute. Reducing a prisoner's sentence upon the attainment of the specified educational achievements must have been intended to serve one of two purposes: it either 1) rewards a prisoner for having attained an educational milestone; or 2) provides incentive for prisoners to pursue educational advancement while incarcerated. We are persuaded that the effective date of I.C. 35–50–6–3.3 provides insight into the legislature's intent in enacting the statute.

I.C. 35–50–6–3.3 does not contain a provision setting out its effective date. However, Ind.Code 1–1–3–3 provides that "each provision of each act passed at a regular session of the general assembly takes effect on July 1 next following its enactment, unless a different time is specified in the act." I.C. 35–50–6–3.3 was approved on April 30, 1993 and therefore was effective as of July 1, 1993. Requiring that a portion of the degree must have been completed after June 30, 1993 in the instant case is tantamount to requiring that a portion of the degree must have been completed after I.C. 35–50–6–3.3 became effective. Such is consistent with the view that the statute was intended to provide incentive. Perhaps more to the point, such is entirely inconsistent with the view that the statute was intended to provide a reward for achievement. If I.C. 35–50–6–3.3's purpose had been to reward academic achievements, it is doubtful that the statute would have included a qualifying cut-off date. Instead, the statute would merely have provided an automatic sentence reduction commensurate with academic accomplishments, without regard to when the accomplishment was achieved.

The legislature imposed a temporal requirement to qualify for reduction which would ensure that attainment of the degree *may* have been motivated, at least in part, by I.C. 35–50–6–3.3. We therefore conclude that the statute was intended to provide incentive to further one's education while incarcerated. Mindful of the legislative intent and purpose underlying I.C. 35–50–6–3.3, we next address whether receiving a degree is "completing a portion of a degree" within the meaning of I.C. 35–50–6–3.3.

The term "completing" focuses on the actions of the prisoner. The statute was intended to provide incentive to prisoners to affirmatively act, i.e., to complete requirements for attaining a degree. Conferring an associate's decree upon Bryant, which occurred on July 23, 1993, was a ministerial act on the part of Ball State University, not Bryant, and required no action on Bryant's part. Presenting the degree to Bryant merely signified that Bryant had completed all portions of his degree requirements. Unfortunately for Bryant, he completed all tasks required of him which were necessary to earn his degree before the effective date of I.C. 35–50–6–3.3. There remained nothing for Bryant to do, i.e., no portion of the de-

gree to complete, after the effective date of the statute.

We hold that, consistent with the legislature's intent in enacting I.C. 35–50–6–3.3, receiving a diploma does not constitute "completing a portion of a degree" within the meaning of the statute. We therefore reverse the trial court's determination that Bryant was entitled to a one-year sentence reduction.

Reversed.

SULLIVAN and CHEZEM, JJ., concur.