**Michael W. POLING, Appellant–Petitioner,**

v.

**STATE of Indiana, Appellee–Respondent.**

**No. 14A01–9910–PC–342.**

Court of Appeals of Indiana.

Dec. 12, 2000.

Michael W. Poling, Pro Se, Pendleton, Indiana.

Karen Freeman–Wilson, Attorney General of Indiana, Janet Brown Mallett, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

SHARPNACK, Chief Judge

Michael W. Poling appeals from the post-conviction court's grant of the State's motion for summary disposition without hearing. Poling presents eight issues, which we consolidate and restate as whether the post-conviction court erred in granting the State's motion for summary disposition without hearing. We affirm.

Because Poling appeals from a summary disposition entered against him, the facts most favorable to Poling follow. *See State v. Daniels,* 680 N.E.2d 829, 835 (Ind.1997). Poling was convicted of murder while in the perpetration of rape [1] and given a sentence of sixty years. *See Poling v. State,* 515 N.E.2d 1074, 1076 (Ind.1987). The Indiana Supreme Court affirmed Poling's conviction on direct appeal. *See id.* at 1081. Thereafter, Poling filed a pro-se petition for post-conviction relief, which was denied without a hearing. Poling hired an attorney to appeal the denial of his petition for post-conviction relief. Poling timely filed the praecipe for the appeal; however, his attorney did not timely file the record, which resulted in the dismissal of Poling's appeal. We denied counsel's motion to file a belated appeal, and the Indiana Supreme Court denied Poling's petition for transfer.

Subsequently, Poling filed a pro-se request with this court to allow him to file a second petition for post-conviction relief, which we granted. *Poling v. State,* 14A01–9602–SP–54 (Ind.Ct.App. July 29, 1997). Poling filed his second pro-se petition with the post-conviction court. Poling filed two motions with the second post-conviction court: (1) a motion to compel the State to turn over items for DNA testing and (2) a motion for DNA testing at public expense. Following hearings on the DNA motions, the post-conviction court denied both motions and, pursuant to Poling's request, certified the decision for interlocutory appeal. We accepted the interlocutory appeal and affirmed the post-conviction court's decision to deny DNA testing. *Poling v. State,* No. 14A01–9808–PC–304, 708 N.E.2d 925 (Ind.Ct.App. Feb. 16, 1999).

Then, before the post-conviction court had the hearing on the remainder of Poling's second petition for post-conviction relief, the State filed a motion for summary disposition without a hearing. The post-conviction court granted the State's motion. In response, Poling filed a motion to correct errors. Because the post-conviction court did not rule on Poling's motion within 45 days, it was deemed denied. *See* Ind. Trial Rule 53.3(A).

The sole issue is whether the post-conviction court erred in granting the State's motion for summary disposition without hearing. Generally, the trial court has discretion about whether to grant a summary disposition, and we will only reverse the trial court's decision for an abuse of that discretion. *Daniels,* 680 N.E.2d at 835. The trial court does not abuse its discretion in granting a summary disposition when "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Id.* at 831; *see also* Ind. Post–Conviction Rule 1(4)(g). We face the same issues that were before the trial court and follow the

---

1.  Ind.Code § 35–42–1–1(2).

same process. *Daniels,* 680 N.E.2d at 832. While any doubts about facts, or the inferences to be drawn therefrom, must be resolved in favor of the appellant, the appellant still has the burden of persuading us that the post-conviction court erred. *Id.*

■ Poling asserts that, pursuant to case law, the post-conviction court was required to have a hearing regarding his second petition for post-conviction relief. *See Everroad v. State,* 678 N.E.2d 1136 (Ind.Ct.App.1997), *reh'g denied, trans. denied,* 690 N.E.2d 1179 (Ind.1997). The State asserts that the holding in *Everroad* is no longer good law because the Indiana Supreme Court has modified Post–Conviction Rule 1, section 12 to eliminate the language that we relied upon for our holding in *Everroad. See* Ind. Post–Conviction Rule 1, § 12. While the State is correct that our supreme court has amended section 12 to eliminate the wording relied upon for our holding in *Everroad,* the fact remains that Poling was granted permission to file his subsequent petition for post-conviction relief before section 12 was amended and when *Everroad* was still the law. Consequently, the trial court erred by not holding a hearing regarding Poling's second petition for post-conviction relief. *See Everroad,* 678 N.E.2d at 1137.

■ However, if there is no genuine issue of material fact and if the State was entitled to judgment as a matter of law, then Poling was not prejudiced by the post-conviction court's failure to have a hearing. *See, e.g., Toan v. State,* 691 N.E.2d 477, 480 (Ind.Ct.App.1998). Therefore, we address each of the nine errors raised in Poling's second petition for post-conviction relief to determine whether the post-conviction court's error requires reversal.

## A.

■ The first issue Poling raised in his second petition for post-conviction relief was whether he received effective assistance of counsel from the attorney who agreed to represent him in the appeal of the denial of his first petition for post-conviction relief. Under Indiana law, the standard for ineffective assistance of post-conviction counsel is more lenient than the ineffective assistance of counsel standard outlined in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Baum v. State,* 533 N.E.2d 1200, 1201 (Ind.1989). Because post-conviction proceedings are not considered criminal proceedings, petitioners are not protected by the guarantees of the Sixth Amendment of the United States Constitution[2] or article 1, section 13 of the Indiana Constitution.[3] *Id.* Effective counsel is not guaranteed, and constitutional standards are not used to judge counsel's performance. *Id.* "[I]f counsel in fact appeared and represented the petitioner in a procedurally fair setting which resulted in a judgment of the court, it is not necessary to judge his performance by the rigorous standard set forth in *Strickland* . . . ." *Id.*

■ In this case, Poling's post-conviction appellate counsel miscalculated the date that the record was due and therefore failed to timely file the record, which resulted in the dismissal of Poling's appeal of the post-conviction court's denial of his first petition for post-conviction relief. We assume arguendo that Poling's counsel's failure to perfect an appeal was below the standard expected of post-conviction counsel because his counsel neither "appeared" nor represented Poling at a "procedurally fair setting." *Id.* Therefore, we return to the standard outlined in *Strickland* to de-

---

**2.** The Sixth Amendment provides, in pertinent part, that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence [sic]." U.S. Const. amend. VI.

**3.** The Indiana Constitution provides, in pertinent part, that "[i]n all criminal prosecutions, the accused shall have the right . . . to be heard by himself and counsel; . . . ." Ind. Const. art. I, § 13(a).

termine whether counsel's error constituted "ineffective assistance." *Id.*

██ Under the *Strickland* test, Poling would have to demonstrate that he was prejudiced by his counsel's actions before we could find that his counsel was ineffective. *Strickland,* 466 U.S. at 686, 104 S.Ct. at 2064. To demonstrate prejudice, Poling must show that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. at 2068. Therefore, if we would have affirmed the post-conviction court's denial of Poling's first petition for post-conviction relief, then Poling was not prejudiced by his counsel's mistake.

██ In his first petition for post-conviction relief, Poling asserted fifteen errors that he claimed warranted post-conviction relief. We address each of these claims to determine whether we would have reversed the post-conviction court's denial of Poling's first petition for post-conviction relief, and, by doing so, we will determine whether Poling was prejudiced by his counsel's error.

### A–1

██ The first issue raised by Poling in his first petition for post-conviction relief was whether DNA tests should be conducted on evidence collected at the crime scene. Poling raised this issue in his successive petition for post-conviction relief, and both the post-conviction court and we addressed the issue on the merits. *See Poling v. State,* No. 14A01–9808–PC–304, 708 N.E.2d 925 (Ind.Ct.App. Feb.16, 1999). As Poling was ultimately denied relief on this claim, there is no reason to assume that we would have granted relief on this basis pursuant to an earlier appeal. Consequently, because Poling was not prejudiced by his counsel's failure to appeal the post-conviction court's denial of his first petition for post-conviction relief, his inef-

fective assistance of counsel claim fails on this issue. *See, e.g., Toan,* 691 N.E.2d at 480.

### A–2

██ The next seven issues raised by Poling in his first petition for post-conviction relief, revised and restated, are:

(2) whether the trial court erred in failing to conduct an *in camera* hearing to decide whether Poling could question a witness about his current address because, in his opinion, being prevented from asking the question denied him his Sixth Amendment right to confront witnesses.[4]

(3) whether photographs of the victim were erroneously admitted into evidence at his trial because they did not illuminate any material fact in issue.

(4) whether the trial court properly instructed the jury regarding "knowingly" and "intentionally" as elements of murder and rape;

(5) whether the trial court improperly instructed the jury regarding the relationship of intoxication to "knowingly" and "intentionally" as elements of murder and rape;

(6) whether a lesser included offense instruction should have been tendered to the jury;

(7) whether the prosecutor engaged in misconduct by characterizing the crime as a joint crime and then subsequently seeking conviction of Poling as the principal after the other principal had been acquitted; and

(8) whether the jury was biased because it was improperly screened during voir dire.

██ Issues that were available to the petitioner on direct appeal, but were not raised, are waived for post-conviction

---

**4.** The Sixth Amendment provides, in pertinent part, that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be con-

fronted with the witnesses against him;...." U.S. CONST. amend. VI.

review; therefore, Poling waived these issues and could not assert them in his first petition for post-conviction relief.[5] *See Palmer v. State*, 563 N.E.2d 601, 603 (Ind. 1990) (regarding right to cross-examine witnesses), *reh'g granted*, 573 N.E.2d 880 (Ind.1991) (granting post-conviction relief on another basis); *Baxter v. State*, 689 N.E.2d 1254, 1259 (Ind.Ct.App.1997) (regarding waiver of jury instruction issues); *Minnick v. State*, 698 N.E.2d 745, 750–751 (Ind.1998) (regarding waiver of prosecutorial misconduct), *reh'g denied*, 705 N.E.2d 179 (Ind.1999), *cert. denied*, 528 U.S. 1006, 120 S.Ct. 501, 145 L.Ed.2d 387 (1999); *Taylor v. State*, 480 N.E.2d 924, 926 (Ind. 1985) (regarding waiver of voir dire issues).

Consequently, Poling was not prejudiced by his counsel's failure to appeal the post-conviction court's denial of his first petition for post-conviction relief and, therefore, his ineffective assistance of counsel claim fails on these issues. *See, e.g., Toan*, 691 N.E.2d at 480.

5. In his reply to the State's response to Poling's first petition for post-conviction relief Poling asserted that a number of these issues should not be waived on post-conviction review because each error constitutes fundamental error. Fundamental errors are errors that deny the petitioner his right to a fair trial. *Conner v. State*, 711 N.E.2d 1238, 1246 (Ind.1999), *reh'g denied, cert. denied,* — U.S. ——, 121 S.Ct. 81, 148 L.Ed.2d 43 (2000). Our supreme court has repeatedly noted that the doctrine of fundamental error is only available in very narrow circumstances. *Taylor v. State*, 717 N.E.2d 90, 93–94 (Ind.1999). Even the denial of specific constitutional rights alone does not always prevent waiver. *Id.* at 93. On post-conviction review, fundamental error only prevents waiver of Sixth Amendment claims of ineffective assistance of counsel or of issues clearly unavailable at trial or direct appeal. *Id.* at 94 (quoting *Canaan v. State*, 683 N.E.2d 227, 235–236 n. 6 (Ind. 1997), *reh'g denied, cert. denied*, 524 U.S. 906, 118 S.Ct. 2064, 141 L.Ed.2d 141 (1998)). Because these issues were clearly available to Poling on direct appeal and because they are not one of the two categories mentioned by our supreme court, they do not now constitute fundamental error. *See, e.g., id.* at 93–94. Moreover, as Poling's confession was admitted into evidence and the only other witness

A–3

The next three issues raised by Poling in his first petition for post-conviction relief, revised and restated, are:

(9) whether the jury was properly sequestered;

(10) whether the State produced sufficient evidence to prove the "knowingly" or "intentionally" elements of the crime; and

(11) whether the trial court properly followed the sentencing guidelines.

The Indiana Supreme Court addressed these issues in Poling's direct appeal. *See Poling*, 515 N.E.2d at 1080 (holding (1) that the trial court did not err by refusing to sequester the jury between the first and second days of voir dire and (2) that Poling waived any review of improper sequestration of the jury by withdrawing his motion to correct errors); *Poling*, 515 N.E.2d at 1079 (holding that there was sufficient evidence before the jury to determine that Poling was guilty of murder); *Poling*, 515 N.E.2d at 1081 (holding that the sentence

testified that Poling committed the crime, Poling's right to a fair trial was not affected. *See, e.g., id.; Wiggins v. State*, 727 N.E.2d 1, 11 (Ind.Ct.App.2000), *trans. denied*, 735 N.E.2d 236 (Ind.2000).

Also in his reply, Poling asserted that a number of these errors occurred because of the ineffective assistance of his trial counsel or that the errors were not raised on direct appeal because of the ineffective assistance of his direct appeal counsel. To demonstrate ineffective assistance of either counsel, Poling would have to demonstrate both that his counsel's performance was unreasonable and that he was prejudiced by his counsel's performance. *Strickland*, 466 U.S. at 686, 104 S.Ct. at 2064. To demonstrate prejudice, Poling would have to demonstrate that but for his counsel's error, the outcome of the trial would have been different. *Id.* at 694, 104 S.Ct. at 2068. Because Poling's confession to police was admitted into evidence and the only other witness testified that Poling committed the crime, Poling also could not demonstrate the prejudice required to justify reversal on the basis of ineffective assistance of counsel. *See Fulmer v. State*, 523 N.E.2d 754, 758 (Ind.1988).

was not manifestly unreasonable because the trial court did not abuse its discretion when it weighed the aggravating and mitigating factors and imposed a sentence of 60 years).

■ The doctrine of res judicata prevents consideration on post-conviction review of issues previously considered and determined on direct appeal. *Minnick,* 698 N.E.2d at 759–760. Therefore, Poling is barred from raising these issues.[6] *See, e.g., Kindred,* 674 N.E.2d at 575 (holding that petitioner was barred from raising issues that had been decided adversely to him in a prior proceeding); *Atherton v. State,* 714 N.E.2d 1116, 1120 (Ind.Ct.App. 1999) (holding that sufficiency of evidence claim on post-conviction review was barred by res judicata), *reh'g denied.*

Consequently, Poling was not prejudiced by his counsel's failure to appeal the post-conviction court's denial of his first petition for post-conviction relief and, therefore, his ineffective assistance of counsel claim fails on these issues. *See, e.g., Toan,* 691 N.E.2d at 480.

### A–4

■ The twelfth issue raised by Poling in his first petition for post-conviction relief was whether his conviction should be reversed because the charging materials were inappropriate in that they alleged a joint crime and his alleged co-defendant was acquitted. To support his argument, Poling cites *Clark,* which Poling asserts requires his conviction be reversed because the results of separate judicial proceedings must be consistent. *See Clark v. State,* 269 Ind. 90, 378 N.E.2d 850, 852

(1978), *cert. denied,* 439 U.S. 1050, 99 S.Ct. 731, 58 L.Ed.2d 711 (1978). However, Poling's reliance on *Clark* is inappropriate for two reasons.

First, *Clark* specifically holds that if co-defendants were charged with a joint crime, but the crime only required one person for its commission, then one of the co-defendants can be convicted of the crime despite the fact that the other is acquitted. *Id.* at 853. Therefore, even if Poling and his co-defendant were charged with a joint crime, it is not improper for Poling to have been the only one convicted.

■ Second, to the extent that *Clark* distinguished between accessories and principals, that opinion no longer controls because, by statute, principals and accessories are no longer considered to have different levels of culpability, and accessories can be charged as principals. *See* Ind. Code § 35–41–2–3; *Fisher v. State,* 468 N.E.2d 1365, 1369 (Ind.1984), *reh'g denied.* Contrary to Poling's argument, Indiana law no longer requires consistency between the convictions of principals and accessories. *Sanquenetti v. State,* 727 N.E.2d 437, 441 (Ind.2000) (holding that the accomplice liability statute, Ind.Code § 35–41–2–3, which allowed the "accessory" to be convicted of murder and the "principal" to be convicted of manslaughter, did not violate the Privileges and Immunities Clause of the Indiana Constitution). Regardless of whether Poling was characterized as the principal or accessory, he could be convicted as the principal. *See* I.C. § 35–41–2–3. Therefore, *Clark* does

6. In his reply to the State's response to his 1st petition for post-conviction relief, Poling asserted that the post-conviction court should address the improper sequestration question that was waived by our supreme court on direct appeal because the issue should not be waived due to the ineffective assistance of his trial counsel in not following through with the motion to correct errors. To demonstrate ineffective assistance of trial counsel, Poling would have to demonstrate both that his counsel's performance was unreasonable and that he was prejudiced by his counsel's per-

formance. *Strickland,* 466 U.S. at 686, 104 S.Ct. at 2064. To demonstrate prejudice, Poling would have to demonstrate that but for his counsel's error, the outcome of the trial would have been different. *Id.* at 694, 104 S.Ct. at 2068. Because Poling confessed to police and the only other witness testified that Poling committed the crime, Poling could not demonstrate the prejudice required to justify reversal on the basis of ineffective assistance of counsel. *See Fulmer v. State,* 523 N.E.2d 754, 758 (Ind.1988).

not require us to reverse Poling's conviction. Because an appeal of this issue would have failed on the merits, Poling was not prejudiced by his post-conviction appellate counsel's failure to perfect an appeal of this issue when the post-conviction court denied his first petition for post-conviction relief. *See, e.g., Toan,* 691 N.E.2d at 480.

### A–5

■■ Next, Poling asserted that a dermatologist should have been appointed at public expense to examine photographs of the crime scene and photographs of Poling that were taken shortly after the crime. Polling alleges that the photographs demonstrate that the victim was found in a patch of poison ivy and that Poling did not have poison ivy shortly after the crime. Therefore, according to Poling, because he is allergic to poison ivy, a dermatologist could provide exculpatory evidence requiring retrial.

■■ A trial court has discretion about whether or not to appoint an expert for an indigent defendant. *Wallace v. State,* 553 N.E.2d 456, 461 (Ind.1990), *cert. denied,* 500 U.S. 948, 111 S.Ct. 2250, 114 L.Ed.2d 491 (1991). We only over-turn the denial of a request for an expert if the trial court has abused its discretion. *Jones v. State,* 524 N.E.2d 1284, 1286 (Ind. 1988). The court has not abused its discretion if appointment of an expert would be needless, wasteful, or extravagant. *Id.*

The evidence indicates that Poling confessed to committing the murder in question. *See Poling,* 515 N.E.2d at 1076. In addition, the only witness testified that Poling committed the murder. *See id.* Assuming arguendo that the dermatologist could say with certainty that Poling could not have committed the murder because the photographs indicate that a person as sensitive to poison ivy as Poling would have had poison ivy at the time the photograph of Poling was taken shortly after the crime, then, as we discussed above, the accomplice liability statute would still allow

Poling to be convicted of felony murder. *See supra* Part A–4. Therefore, the dermatologist's testimony would not require a retrial, and the post-conviction court did not abuse its discretion in denying the request for a dermatologist because the appointment would be needless. *See Jones,* 524 N.E.2d at 1286.

Consequently, Poling was not prejudiced by his counsel's failure to appeal the post-conviction court's denial of his first petition for post-conviction relief and, therefore, his ineffective assistance of counsel claim fails on this issue. *See, e.g., Toan,* 691 N.E.2d at 480.

### A–6

■■■ The fourteenth issue raised by Poling in his first petition for post-conviction relief was whether "[a] complete and thorough examination of all evidence collected in this cause will allow a reconstruction of the crime scene which will exhonerate [sic] the Petitioner." This is a blatant request for the post-conviction court to reweigh the evidence and substitute its judgment for the judgment of the jury, which it could not do. *See Palmer,* 563 N.E.2d at 603. Moreover, had Poling's attorney appealed to us, we also could not have reweighed the evidence. *See Ingram v. State,* 508 N.E.2d 805, 807 (Ind.1987). Therefore, as for this issue, Poling was not prejudiced by his appellate counsel's failure to perfect the appeal of the post-conviction court's denial of his first petition for post-conviction relief, and his ineffective assistance of counsel claim fails on this issue. *See, e.g., Toan,* 691 N.E.2d at 480.

### A–7

The fifteenth issue raised by Poling in his first petition for post-conviction relief was whether his sentence should be reduced because he had obtained educational degrees while incarcerated. As Poling cited to no authority, we are unsure of the basis for his argument. Therefore, we discuss two statutes that address this is-

sue, Ind.Code § 35–50–6–3.3 and Ind.Code § 35–38–1–23.

■■■ We turn first to Ind.Code § 35–50–6–3.3, which provides for a reduction in a prisoner's sentence on the basis of educational accomplishments occurring while the prisoner is incarcerated. The statute specifically limits its applicability to degrees earned after July 1, 1993. *See* Ind. Code § 35–50–6–3.3. Because the educational degrees that Poling had obtained at the time of his first petition for post-conviction relief was denied were earned before July 1, 1993, the post-conviction court could not have used that statute to reduce Poling's sentence. *See, e.g., Miller v. Bryant,* 644 N.E.2d 188, 191–192 (Ind. Ct.App.1994) (holding that defendant completed work on degrees prior to July 1, 1993 and that therefore the trial court erred in giving him a one year credit toward his sentence), *trans. denied.*

■■■ We next turn to Ind.Code § 35–38–1–23, which provides that a person may petition the sentencing court for reduction of a sentence if five specific factors are met. *See* Ind.Code § 35–38–1–23. However, a trial court does not abuse its discretion by refusing to reduce a sentence when it is allowed to do so under this statute because the statutory language permits, but does not require, the trial court to reduce the sentence. *Myers v. State,* 718 N.E.2d 783, 789 (Ind.Ct.App. 1999). Therefore, assuming arguendo that Poling met each of the factors, the post-conviction court would not have abused its discretion by refusing to modify Poling's sentence on this ground. *See id.* (finding no abuse of discretion when defendant met all factors).

Therefore, because we would not have found that the trial court abused its discretion by refusing to modify Poling's sentence pursuant to Ind.Code § 35–38–1–23, and because Ind.Code § 35–50–6–3.3 was inapplicable, Poling was not prejudiced by his counsel's failure to perfect the appeal of this issue following the denial of Poling's

first petition for post-conviction relief, and his ineffective assistance of counsel claim fails on this issue. *See, e.g., Toan,* 691 N.E.2d at 480.

Because each of the fifteen allegations of error that Poling asserted in his first petition for post-conviction relief were without merit, we would have affirmed the post-conviction court's denial of Poling's first petition. Therefore, Poling was not prejudiced by his counsel's failure to perfect an appeal of the post-conviction court's denial of his first petition, and this ineffective assistance of counsel claim must fail. *See Toan,* 691 N.E.2d at 480. Consequently, because this ineffective assistance of counsel claim was without merit, Poling was not prejudiced by the post-conviction court's failure to hold a hearing on his second petition for post-conviction relief. *See, e.g., Toan,* 691 N.E.2d at 480.

### B.

■■■ The second issue raised in Poling's second petition for post-conviction relief is whether DNA testing should be conducted on evidence collected from the victim at the scene of the crime. However, this issue has previously been decided adversely to Poling by the post-conviction court. On interlocutory appeal, we affirmed the trial court's order in a memorandum decision. *See Poling v. State,* No. 14A01–9808–PC–304, 1999 WL 140402 (Feb. 16, 1999). Res judicata bars Poling from re-litigating the DNA issue in this appeal or in a subsequent hearing on his second petition for post-conviction relief. *See, e.g., Kindred v. State,* 674 N.E.2d 570, 575 (Ind.Ct.App.1996) (holding that petitioner was barred from raising issues that had been decided adversely to him in a prior proceeding), *reh'g denied, trans. denied,* 683 N.E.2d 595 (Ind.1997). Consequently, on this issue, Poling was not prejudiced by the post-conviction court's failure to hold a hearing on his second petition for post-conviction relief. *See, e.g., Toan,* 691 N.E.2d at 480.

## C.

The third issue Poling raised in his second petition for post-conviction relief was whether the trial court erred in failing to conduct an *in camera* hearing to decide whether Poling could question a witness about his current address because, in his opinion, being prevented from asking the question denied him his Sixth Amendment right to confront witnesses. Because Poling raised this issue in his first petition for post-conviction relief, res judicata prevents him from raising the issue in his second petition. *See id.* Consequently, on this issue, Poling was not prejudiced by the post-conviction court's failure to hold a hearing on his second petition for post-conviction relief. *See, e.g., Toan,* 691 N.E.2d at 480.

## D.

The fourth, fifth, and sixth issues raised by Poling in his second petition for post-conviction relief involve jury instructions. We restate those issues as:

(4) whether the jury instructions are confusing when considered cumulatively;

(5) whether the trial court erred when it read to the jury an instruction that Poling tendered about attempt; and

(6) whether the trial court erred by giving an instruction that did not tell the jury all of the elements that the State had to prove beyond a reasonable doubt.

Because these issues were available on direct appeal or at the time of the first petition for post-conviction relief, but Poling did not raise them, they are waived and cannot be asserted in a successive petition for post-conviction relief.[7] *See* P–C.R. 1, § 8; *Baxter,* 689 N.E.2d at 1259. Consequently, on these issues, Poling was not prejudiced by the post-conviction court's failure to hold a hearing on his second petition for post-conviction relief. *See, e.g., Toan,* 691 N.E.2d at 480.

## E.

The seventh issue raised by Poling in his second petition for post-conviction relief was whether he received ineffective assistance from his trial and direct appeal counsel. Poling is prohibited from raising the effectiveness of his trial or direct appeal counsel in a successive petition for post-conviction relief because the claim was available at the time of Poling's first petition for post-conviction relief, but he did not raise the claim then. *See* P–C.R. 1, § 8; *Harrison v. State,* 585 N.E.2d 662, 666 n. 3 (Ind.Ct.App.1992), *trans. denied.* Consequently, on this issue, Poling was not prejudiced by the post-conviction court's failure to hold a hearing on his second petition for post-conviction relief. *See, e.g., Toan,* 691 N.E.2d at 480.

## F.

The eighth issue raised by Poling in his second petition for post-conviction relief is whether prosecutorial misconduct occurred at six different times during Poling's trial.[8] Poling is prohibited from rais-

7. Poling claimed that these alleged errors were fundamental. However, fundamental error doctrine cannot prevent waiver of this issue on post-conviction relief because the issue was clearly available on direct appeal and Poling cannot show that his right to a fair trial was affected. *See supra* n. 5.

8. The six allegations include:
"i. Improper cross-examination of defendant, forcing him to characterize police as lires [sic] or mistaken;
ii. improper vouching for the character of police officers who had testified;
iii. improper reference, during final arguments, to evidence no[t] admitted;
iv. improper statement by prosecutor that he believed the defendant had been proven guilty;
v. improper representation of coronor's [sic] testimony as being that in his opinion a sexual assualt [sic] had occored [sic], when, in fact, the coronor [sic] had not so testified;
vi. improper reference during closing arguments to a witness who did not testify, soley [sic] to appeal to the emmotions [sic] of the jury."
Record, p. 366.

ing this issue in a successive petition for post-conviction relief because he could have raised these six allegations of prosecutorial misconduct in his first petition for post-conviction relief or on direct appeal, but he did not do so.[9] *See* P–C.R. 1, § 8; *Minnick*, 698 N.E.2d at 750–751 (holding that claims of prosecutorial misconduct not raised on direct appeal are waived for post-conviction relief). Consequently, on this issue, Poling was not prejudiced by the post-conviction court's failure to hold a hearing on his second petition for post-conviction relief. *See, e.g., Toan*, 691 N.E.2d at 480.

## G.

■ Finally, the ninth issue raised by Poling in his second petition for post-conviction relief is whether "Indiana code 35–50–6–3.3 ["the educational time-credit statute"] is unconstitutional and violates petitioner's 14th [sic] amendment rights by depriving him of additional credit time for having earned his GED, associate's degree, and bachelor's degree...." Record, p. 366. Ind.Code § 35–50–6–3.3 provides that prisoners who complete educational degrees after July 1, 1993 receive credit toward their sentences and that prisoners who complete educational degrees before that date do not receive credit.[10] I.C. § 35–50–6–3.3. The record indicates that Poling earned a number of degrees prior to 1993. Hence, Poling received no credit for those degrees, and he claims that this violates his right to equal protection.[11]

Poling's argument is very similar to an argument raised in *Cottingham*, a case decided by our supreme court nearly twenty years ago. *See Cottingham v. State*, 424 N.E.2d 105 (Ind.1981), *reh'g denied*. In *Cottingham*, a prisoner argued that his right to equal protection was violated by the state's new good time credit statute because the statute only provided credit to prisoners who experienced presentence incarceration after the statute was passed. *Id.* at 107. Our supreme court held that a prisoner had no constitutional right to receive credit time; therefore, a rational basis test would be used to assess the constitutionality of the statute. *Id.* at 106, 107. Under a rational basis test, the question is "only whether the distinction between inmates rationally furthers some legitimate, articulate state purpose." *Id.* at 107 (quoting *McGinnis v. Royster*, 410 U.S. 263, 269–270, 93 S.Ct. 1055, 1059, 35 L.Ed.2d 282 (1973)). Because the statute had the purpose of providing good time credit to persons who, after October 1, 1977, were incarcerated prior to sentencing, our supreme court held that equal protection was not violated by the failure to retroactively apply the good time credit statute to all

9. In fact, as discussed above, Poling did raise a different claim of prosecutorial misconduct in his first petition for post-conviction relief, thereby demonstrating that he could have raised these six issues.

10. The version of Ind.Code § 35–50–6–3.3 in effect when Poling submitted his second petition for post-conviction relief provided, in pertinent part:

    (a) In addition to any credit time [from other statutes] ... a person earns credit time if the person:

      (1) is in a credit Class I;

      (2) has demonstrated a pattern consistent with rehabilitation; and

      (3) successfully completes requirements to obtain one (1) of the following:

      (A) A general educational development (GED) diploma ...

      (B) A high school diploma.

      (C) An associate's degree....

      (D) A bachelor's degree....

     \* \* \* \* \*

    (d) A person does not earn credit time under subsection (a) unless the person completes at least a portion of the degree requirements after June 30, 1993.

Ind.Code § 35–50–6–3.3 (West 1998). The amended version of this statute contains these provisions in sections (a) and (f). I.C. § 35–50–6–3.3 (West 2000, pocket part).

11. Because Poling sets out no argument or analysis based on the equal protection clause of the Indiana Constitution, we address only his federal constitutional claim. *See Reilly v. Daly*, 666 N.E.2d 439, 445 n. 2 (Ind.Ct.App. 1996), *trans. denied*.

prisoners who were still incarcerated. *Id.* at 106, 107.

 The logic of *Cottingham* controls here. Because Poling has no constitutional right to receive educational time credit, the State must only show a rational basis for distinguishing between persons earning degrees before and after June 30, 1993 in order to sustain the statute. *See id.* at 107. We have previously held that the purpose of the educational time-credit statute is to provide incentive for inmates to complete educational degrees, not to reward inmates for degrees already completed. *Miller*, 644 N.E.2d at 191. This purpose, providing incentive, is rationally related to providing credit only to inmates who complete degrees after the statute was enacted. Therefore, the fact that Poling does not receive educational time credit under Ind.Code 35–50–6–3.3 does not violate Poling's right to equal protection under the Fourteenth Amendment. *See, e.g., Cottingham*, 424 N.E.2d at 107.

Consequently, Poling's claim is without merit, and he was not prejudiced by the post-conviction court's failure to hold a hearing on his second petition for post-conviction relief. *See, e.g., Toan*, 691 N.E.2d at 480.

### Conclusion

 Because each of the nine claims of error alleged in Poling's successive petition for post-conviction relief was waived, was barred by res judicata, or failed on the merits, the State was entitled to judgment as a matter of law, and Poling was not prejudiced by the post-conviction court's denial of his petition. In the absence of prejudice, the post-conviction court did not commit reversible error by denying Poling's second petition for post-conviction relief without a hearing.[12] *See*

12. Poling also asserts that the post-conviction court erred by not stating specific findings of fact and conclusions of law. However, the failure to set out findings and conclusions is not reversible error when the parties have sufficiently presented the issues for review.

*id.* Therefore, the judgment of the post-conviction court is affirmed.

Affirmed.

BAKER and VAIDIK, JJ., concur.

*Toan*, 691 N.E.2d at 480 n. 3. Moreover, when the petitioner's claims do not entitle him to relief, he has not been harmed by the failure to state specific findings or conclusions. *Id.*